BIRATH, APPELLANT AND
CROSS-APPELLEE, *v.*
BIRATH, APPELLEE AND
CROSS-APPELLANT. ▮

(No. 87AP-105—Decided
July 28, 1988.)

*Michael L. Close,* for appellant and cross-appellee.

*Andrea R. Yagoda,* for appellee and cross-appellant.

WHITESIDE, P.J. Plaintiff, John F. Birath, Jr., appeals from a decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, and raises assignments of error, as follows:

"IA.   The trial court errored [*sic*] in awarding a property division that in effect awarded after-acquired assets (cash) of the plaintiff to the defendant.

"IB.   The trial court errored [*sic*] in not allowing the plaintiff cash setoffs for any cash contributions he made to tax shelters of the parties in the years subsequent to the divorce.

"* * *" ▮

Defendant, Jane C. Birath, also appeals and raises five assignments of error as follows:

"1.   The trial court abused its discretion in its award of alimony.

"2.   The trial court abused its

discretion in ordering only $800.00 per month child support and ordering appellee to pay one-half [of] all uncovered medical expenses.

"3. The finding of the trial court that appellant-husband was not in arrears for child support and alimony was against the manifest weight of the evidence and contrary to law.

"4. The trial court abused its discretion in requiring that appellee's share of the tax shelter savings be reduced by the tax benefit she realizes after deducting real estate taxes and mortgage interest.

"5. The trial court abused its discretion to the prejudice of appellee-wife in excluding relevant evidence during the trial."

The parties terminated their nineteen-year marriage on March 6, 1986, although the parties agreed to use December 31, 1985 as a division date since they had been separated prior to the time of the filing of the divorce. Three children were born of the marriage and, at the time of the divorce, two remained at home and the third was enrolled in college. The trial court awarded defendant custody of the minor children and required plaintiff to pay defendant $400 per month per child in child support and $1,150 per month to defendant as sustenance alimony, deductible to plaintiff and taxable to defendant. The trial court awarded defendant the marital residence, her IRA account, her checking and savings accounts, her automobile, household goods in her possession, Kodak and Kemper stock, and thirty-three percent of plaintiff's Keogh plan assets to be transferred pursuant to a "Qualified Domestic Relations Order," thereby assuring no tax consequences under federal tax law.

Additionally, the court concluded that:

"* * * having heard no credible evidence indicating there is any arrearage on temporary orders finds that there is no arrearage and concludes that no amounts are owning by Plaintiff to Defendant on said account.

"The Court being mindful that there is no present, current, or fair market value in any tax shelter held by the Plaintiff in his name, and mindful that any value that said assets might have to the Plaintiff are speculative based on his future earnings, future place of employment, and perspective [sic] changes in tax law, does award all of those tax shelters to the Plaintiff. Those are specifically: the Bricker & Eckler building company, Springwood Apartments, ABS and AFG Leasing."

So finding, the court ordered:

"* * * [A]s further alimony, not deductible by the Plaintiff and not taxable to the Defendant, payable in cash and terminable upon the death of either party or the remarriage of the wife, that the Plaintiff shall pay to the Defendant one-half of the difference between the net tax savings generated for the Plaintiff by those shelters after subtracting the tax benefit of the interest and taxes on the residence of the parties which has been awarded to the Defendant."

Lastly, the court stated that it "* * * being mindful of the value of the attorney fees rendered by the attorney for the Defendant, does award as and for further alimony, taxable to the Defendant and deductible to the Plaintiff, the sum of Five Thousand Dollars ($5,000.00) which shall be paid at the rate of Two Hundred Dollars ($200.00) per month * * *."

Plaintiff, in his first assignment of error, contends that the trial court erred in awarding as property-division alimony to defendant cash payments of a portion of plaintiff's future tax savings generated as a result of tax shelters acquired during the marriage and in doing so without considering the additional money plaintiff was re-

quired to invest in those tax shelters. By her fourth assignment of error, defendant contends that the trial court erred in reducing the amount she would have received from the tax-shelter benefits by the amount of tax savings received as a result of mortgage-interest payments.

The trial court has broad discretion to make property-alimony awards. The Supreme Court in *Conner* v. *Conner* (1959), 170 Ohio St. 85, 9 O.O. 2d 480, 162 N.E. 2d 852, and *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 5 OBR 481, 450 N.E. 2d 1140, stated that an abuse of discretion may be found only where the determination of the trial court is unreasonable, arbitrary or unconscionable. An appellate court may not simply substitute its own judgment of factual or discretionary issues for those of the trial court. The Supreme Court in *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348, 20 O.O. 3d 318, 421 N.E. 2d 1293, and *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399, 75 O.O. 2d 474, 350 N.E. 2d 413, emphasized the importance of leaving discretion to the trial court to determine an equitable property distribution based on the facts and circumstances of each case. Additionally, these cases state that a potentially equal division should be the starting point of analysis, and neither party should make a profit at the expense of the other.

In the case before us, it is evident from the record that the trial court endeavored to determine the present value of the tax shelters at issue so as to include them in its potentially equal division of property. Both parties offered a significant amount of testimony as to the value to be given to the tax shelters, the plaintiff arguing that there was no present value and the future value was too speculative to determine in the present, and the defendant offering testimony as to the present value based on assumptions.

about the future. The court found that the tax shelters have no current value and concluded that the testimony was "speculative in nature" and depended in part on future tax law, plaintiff's continued employment at his current pay rate, and plaintiff's position as a partner at the Bricker & Eckler law firm.

However, the trial court then proceeded to order that, as future alimony, not deductible by plaintiff or taxable to defendant, the plaintiff would pay to defendant, in cash, one half the difference between the net tax savings generated for the plaintiff by those tax shelters after subtracting the tax benefit of interest and tax payments on the parties' marital residence which was awarded to the defendant.

R.C. 3105.18 directs the trial court to allow alimony as it deems reasonable to either party and such alimony (whether property division or sustenance) may be allowed in real or personal property, or both, or by a sum of money payable either in gross or installments as the court deems equitable. R.C. 3105.18 does not differentiate between property-division alimony and sustenance alimony but, rather, lists only factors to be considered. The Supreme Court in *Berish* v. *Berish* (1982), 69 Ohio St. 2d 318, 23 O.O. 3d 296, 432 N.E. 2d 183, emphasized that it is the equitableness of the result which must stand the test of fairness on review.

Traditionally, the courts of Ohio in dividing the assets of the parties start with a potentially equal division of present assets (see *Cherry, supra,* and *Wolfe, supra),* and proceed to determine whether and in what amount sustenance alimony is required. This court (*e.g.,* see *Buckles* v. *Buckles* [1988], 46 Ohio App. 3d 102, 546 N.E. 2d 950), has continually reiterated that sustenance alimony and property-division alimony are necessarily inter-

related parts of a single whole under R.C. 3105.18 and that, to the extent feasible, each party should enjoy, after termination of marriage, a standard of living comparable to that standard established during marriage but as necessarily adjusted by the various factors of R.C. 3105.18(B). R.C. 3105.18 does not contemplate that, in the absence of extraordinary circumstances, one party will enjoy the same or a higher standard of living while the other party is forced to live on a greatly reduced standard of living from that established during the marriage, where the marriage is one of long duration.

The specific tax shelters which are at issue are the parties' interest in Springwood Apartments, ABS Associates, AFG Leasing, and the Bricker & Eckler building partnership. Plaintiff contends that these investments are of value only as they provide future tax savings but that they have no current fair-market value. Specifically, he argues the following: (1) Springwood Apartments is a limited partnership in which he owns one unit and has a balance due of $2,734. (2) AFG is an equipment-leasing company in which plaintiff has leased rolling stock in railroads and the tax benefits realized heretofore are equal to the amount of money that plaintiff originally vested. (3) ABS is a general partnership in which plaintiff holds a ten-percent interest. The partnership acquired a building for $450,000, made improvements of $50,000, and then leased the building to a nonprofit organization. The rental payments are only sufficient to cover the "debt service," which this court presumes is the amount of payments on the mortgage, note, and lease on the land. Plaintiff testified that the debt equals or exceeds the value of the building at this time. (4) Bricker & Eckler Building is a partnership of partners in the Bricker & Eckler law firm. The sole purpose of the partnership is to acquire a leasehold interest in and to renovate the old post office building. This was accomplished by borrowed funds from industrial revenue bonds, urban development grants, and bank financing. Each partner has an interest, but there is no "buy-out provision" during the first five years.

Defendant contends that these assets have a present value based on future tax-shelter advantages and the following underlying assumptions: (1) plaintiff's future tax rate (federal, state and local) will be forty percent; (2) plaintiff will remain a partner at Bricker & Eckler law firm at his current pay rate; and (3) seven percent is a reasonable figure to use when discounting future tax savings to present value. Plaintiff contends that the necessity of making these assumptions makes any value to the parties purely speculative.

The trial court found that the testimony of the present value of possible tax consequences of the four assets was speculative in nature being dependent on too many future variables.

Tax shelters are hybrid in nature. They sometimes exist as the result of property acquired during the marriage but may not necessarily be realized until after the marriage is terminated. Tax shelters, by their very nature, may impact only upon the future *net* earning ability of the party or parties who have acquired them and who retain them, in this case, the plaintiff. In some instances, they are of greater value to the party with the greater income for they may generate a greater tax savings to that party.

Tax-shelter consequences are not a specific factor enumerated under R.C. 3105.18 but certainly may be a relevant factor to be considered when awarding alimony. As such, tax shelters are closely related to the earn-

ing ability and income of the parties and may affect both the net earning ability and the net income of the party to whom they are awarded. Tax shelters acquired during the marriage are marital assets whose benefit can only be realized in the future, not as certain as, but somewhat in the same category as, annuities, although annuities are capable of present valuation. Consideration of possible tax-shelter consequences may be an integral part of the court's decision in determining alimony, especially sustenance alimony. However, because of their generally very speculative nature, often dependent upon unknown future events, it is difficult to place a real or definite present value on tax shelters.

Presumably, the trial court did not consider these tax shelters in its potentially equitable distribution of property. The parties stipulated that December 31, 1985 would be the date of valuation of the assets and property interests, and the trial court found, within its discretion, as supported by the record, that the four assets had no present, current, or fair-market value as of December 31, 1985.

Here, the trial court utilized a unique approach to solve the dilemma of how to treat a very valuable tax shelter, the present value of which is purely speculative but which will be of substantial monetary value to the holder of the tax shelter when the tax benefits are realized on a year-to-year basis. In other words, the value of a tax shelter is not the value of physical property but, rather, is intangible in nature and consists primarily of tax savings which necessarily will be realized in the future.

The method of division selected by the trial court was an approximate equal division of the benefit of the tax shelters, to be paid as received by plaintiff. In other words, the trial court

realized that the monetary benefit from the tax shelters would not be realized until the future. The trial court at the same time felt it equitable that defendant should receive a portion of the tax shelters. Since it was not feasible to determine and place a present value upon the tax shelters and make the division in that fashion and since the enjoyment by plaintiff would only occur in the future in any event, making it inequitable to require plaintiff to make payment of a definite sum immediately, the trial court ordered such payments to be made in installments as received by plaintiff. The award was of money, a cash payment to defendant, rather than a share of the tax shelters, but to be paid only when plaintiff realized the enjoyment of the tax-shelter benefit.

Contrary to the assertion of plaintiff, the tax-shelter benefit is not an after-acquired asset. Although enjoyment of the benefit of the tax shelter will occur in the future, the right to receive such benefit (contingent upon certain conditions) enured during the marriage. We find no abuse of discretion on the part of the trial court in delaying the alimony payments to be made to defendant until such time as plaintiff has the monetary enjoyment of the tax-shelter benefit. Such a determination enures to the benefit of plaintiff, rather than to his detriment, since he does not have to make a payment until he has received the monetary benefit of the tax shelter upon which the amount of the required payment is calculated. In essence, the trial court awarded an indefinite amount of future alimony to be determined by a formula set forth in the decree, that formula being a calculation of the difference between the net tax savings generated for plaintiff by the tax shelters and the tax benefit to defendant of the interest and tax payments on the residence awarded to her. The

trial court determined to divide between the parties' future tax savings generated by marital property, rather than to divide the property itself between the parties on an equality basis but to limit the payments to a ten-year period. The need for such a determination was, in the opinion of the trial court, generated by the speculative nature of the present value of the tax shelters awarded to plaintiff. Accordingly, we find plaintiff's assignment of error IA not to be well-taken. The trial court did not err in making an award of alimony to defendant, presumably as part of the property division, to be calculated by a formula dependent upon the tax savings generated by the tax shelter and the interest and tax payments on the residence and to be paid over a ten-year period.

However, there is some problem with the trial court's order. As indicated by assignment of error IB, the trial court order permits additional cash contributions made by plaintiff in years subsequent to the divorce to be included as part of the tax shelter, the benefit of which is to be divided between the parties. To the extent that the order so provides, it is erroneous, since this would require plaintiff not only to share the marital property with defendant but also to share with defendant property acquired after the marriage from income earned after the marriage. Accordingly, assignment of error IB is well-taken.

Likewise, defendant's fourth assignment of error is well-taken. The formula adopted by the trial court awards defendant less than an equal division of the tax-shelter savings. The effect of the trial court order is to award plaintiff one half of defendant's tax savings derived from payments made by her and to award defendant one half of plaintiff's tax savings derived from the tax shelters. Thus, if the tax savings generated by the tax shel-

ter were $1,000 and the tax savings realized by defendant from real estate taxes and mortgage interest were $100, the net amount to be divided would be $900, with $450 to be paid by plaintiff to defendant, which, coupled with her $100 tax savings on the taxes and mortgage interest, would amount to a total $550. Likewise, plaintiff would retain $550 of the tax savings generated by the tax shelter.

This seems to be equality and it would be, except for one factor. Just as we indicated that it was an abuse of discretion for the trial court to award future contributions made by plaintiff to the tax shelters, it likewise was an abuse of discretion to award to plaintiff the benefit of future payments made by defendant which may generate a tax savings to her. The tax and interest payments must be made by defendant from her income. The fact that she has paid those taxes and interest may reduce her tax liability, but such reduction in tax liability is not generated from the residence but, rather, from payments made by defendant from her income.

To the extent that plaintiff enjoys a tax benefit without making a payment from his income, the trial court properly deferred division of that benefit until realized by plaintiff. There is no realization of a monetary benefit by defendant from taxes and interest on the residence awarded to her since what is involved is a living expense paid by her, consisting of paying taxes and mortgage interest from her income. This so-called tax benefit or consequence is merely a reduction in the amount of the expense, not a monetary benefit realized because of the ownership interest in the residence. We agree with defendant that the trial court abused its discretion in utilizing the tax benefit created by payment by defendant from her income of taxes and mortgage interest in the future as

a means of reducing the share of the tax-shelter benefit that should be awarded to defendant.

\* \* \*

Turning to defendant's remaining assignments of error, for reasons of clarity, we will discuss first the second assignment of error, by which defendant contends that it was error for the trial court to award only $800 per month in child support and to order plaintiff to pay only one half of all uncovered medical expenses.

In determining the amount reasonable and necessary for child support, R.C. 3109.05 requires the court to consider all relevant factors, including the financial resources of the child, the financial resources and needs of the custodial parent, the standard of living the child would have enjoyed had the marriage continued, and the educational needs of the child and the educational opportunities that would have been available to him had the circumstances requiring the court order for his support not arisen. This court in *Cheek* v. *Cheek* (1982), 2 Ohio App. 3d 86, 2 OBR 95, 440 N.E. 2d 831, held that the proper determination of child support requires first the establishment of the monetary amount necessary for the support of the child in a standard of living commensurate with the income of the parents, followed by an equitable division of the support between the parents in amounts reasonable under all the circumstances. The amount necessary for child support is that amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued. The amount reasonable for child support includes consideration of other factors including the financial resources and needs of both the custodial and non-custodial parent.

Although they were not in effect at the time, the recently adopted Child Support Guidelines give us some indication of how inadequate the child-support award is in this case. Construing all evidence in the light most favorable to plaintiff, it can be anticipated that the parties' combined salary will be no less than $120,000, with the plaintiff earning $100,000 and the defendant earning $20,000. This does not account for the tax-shelter advantages resulting in greater after-tax income which will more than likely be available to plaintiff. It can be anticipated that a monthly minimum of $1,500 will be necessary to support the two children, considering especially the standard of living the children would have enjoyed and the educational needs which would have been available to them if the marriage had continued.

The trial court in this case determined that a reasonable allocation of child support between the two parties would be to require the plaintiff to pay $800 per month in child support even though he has five times the earning ability of defendant. This is manifestly unreasonable, particularly in light of the fact that plaintiff is no longer required to pay certain medical and school expenses which he was required to pay during the pendency of the divorce. Accordingly, defendant's second assignment of error is sustained.

Defendant, in her first assignment of error, contends that the trial court abused its discretion in its award of alimony, asserting that the amount awarded for sustenance alimony was too low, ceased on plaintiff's death, and was not protected by life insurance and that the amount awarded for attorney's fees was unreasonable. The trial court awarded defendant $1,150 per month as sustenance alimony and, being mindful of the attorney fees rendered by the attorney for the defendant, awarded as further alimony taxable to defendant and deductible to

plaintiff the sum of $5,000 payable at the rate of $200 per month.

A trial court, in making an award of sustenance alimony under R.C. 3105.18, must consider all relevant factors, including the relative earning abilities of each party, the ages and physical and emotional conditions of the parties, the retirement benefits of each, the duration of the marriage, the standard of living of the parties established during the marriage, the relative extent of the education of the parties, the relative assets and liabilities of each party, and the contribution of the spouse as a homemaker. Additionally, tax consequences of any alimony award must be considered when making the award. The Supreme Court in *Berish, supra,* emphasized that it is the equitableness of the result which must stand the test of fairness on review.

A review of the record reveals that defendant asserted, based on a standard of living which is lower than that maintained during the last years of the marriage, that she needed approximately $3,000 per month to maintain herself and her children. This included approximately $115 in medical expenses, but did not include the following items which were reflected on defendant's budget: $396 in uninsured family medical expenses per month; $155 per month for children's orthodontics; and $50 per month for children's expenses relating to school and sports. Additionally, and understandably, defendant's budget made reference to but did not delineate any tax liability that she would incur at the time the court awarded her alimony.

The trial court found that reasonable expenses necessary for the defendant to maintain herself and her minor children were approximately $2,900, and the defendant earned a gross income of $17,316 per year as a teacher. After the trial court's award

of sustenance alimony in the amount of $1,150 per month and child support in the amount of $800 per month, defendant, in order to operate within her submitted budget, and considering the possible tax consequences on the alimony she will receive, will need to net at least $1,300 per month. Defendant testified that her net pay as a teacher is only approximately $1,090 per month.

The trial court found that plaintiff's income for the year 1985 was $114,000. Pursuant to the trial court's award, based on the trial court's findings, it can be anticipated that plaintiff will have, after deduction for alimony payments, a taxable income of approximately $100,000, of which more than $9,600 will have been paid to defendant for child support, leaving defendant with a gross income of approximately $90,000. Considering the testimony as to plaintiff's anticipated tax savings due to tax shelters acquired during the marriage, there appears to be little likelihood that plaintiff will encounter full tax liability on the $100,000 of anticipated taxable income. Although the law does not contemplate an equal standard of living for the parties after the termination of a marriage, in the same manner, the law does not contemplate that one party will live in a drastically reduced lifestyle, particularly following a marriage of long duration during which three children were born.

We are also mindful that in sustaining defendant's second assignment of error, we are requiring the trial court to determine a greater amount of child support equitable for plaintiff to pay to defendant. However, in light of the totality of the evidence, we cannot find the amount of the sustenance alimony award to be unreasonable even though minimal.

Defendant also contends that the trial court abused its discretion by pro-

viding that alimony cease at plaintiff's death and failing to order plaintiff to maintain a life insurance policy with defendant as beneficiary.

Pursuant to R.C. 3105.18, a trial court may allow alimony as it deems reasonable. The trial court is given broad discretion. Given the facts of this case, particularly the trial court's award of sustenance alimony for an indefinite period of time and the trial court's order for plaintiff to maintain sufficient life insurance to protect plaintiff's child-support obligation, it was not an abuse of discretion for the trial court not to require plaintiff to maintain sufficient life insurance to protect the sustenance-alimony obligation, as well as the child-support obligation. Of course, assuming an insurable interest because of the sustenance-alimony award, defendant may obtain such a policy and bear the cost thereof herself.

Defendant also contends that the trial court erred by awarding an unreasonably small amount for attorney fees. Defendant's attorney testified that the total charges for legal fees amounted to $27,500 excluding the trial and were the result of plaintiff's involvement in several partnerships.

Without explanation, the trial court found that the reasonable value of attorney fees, rendered on behalf of the defendant by her latest attorney, was $5,000. The trial court ordered plaintiff to pay defendant the sum of $5,000, to be paid at a rate of $200 per month. This amount was ordered to be taxable to defendant and, as a consequence, the trial court essentially awarded less than $5,000, considering the plaintiff's tax benefit and defendant's tax liability generated by that award.

The Supreme Court, in *Gage* v. *Gage* (1956), 165 Ohio St. 462, 60 O.O. 117, 136 N.E. 2d 56, has stated that an award of alimony may include an allowance for reasonable attorney fees. A decision to award or not to award attorney fees should not be interfered with absent a clear showing of abuse or prejudice by the trial court. A trial court decision to award or not to award attorney fees should take into consideration the factors of R.C. 3105.18, specifically the earning abilities of the parties and the relative assets and liabilities of each. Tax consequences should always be a consideration.

The trial court found that $5,000 was a reasonable amount to cover the *entire* legal bill. The evidence indicates the attorney expended two hundred twenty-one hours in rendering legal services to defendant in representing her in this action. The award equals an hourly rate of only $22.62. There was no finding that either the hourly rate charged (apparently $120) was unreasonable or that the time expended was not reasonably required. Perhaps this was the intention of the trial court. However, there is no evidence of a lump-sum fee, nor is there any local practice within the "intrinsic ability" of the trial court to evaluate. In short, the trial court's finding "that the reasonable value of the attorney fees rendered in behalf of defendant by her latest attorney for which she makes claim is five thousand dollars" is unsupported by evidence in light of the only evidence on the issue being that the services were reasonably worth at least $20,000.

The evidence was that the attorney expended forty-three hours prior to the filing of the complaint (including settlement negotiations), some one hundred sixty-eight additional hours prior to trial, and ten hours in trial, all of which was reasonably necessary and that a reasonable hourly fee is $120, none of which is disputed, although some cross-examination suggests that

defendant required more attorney attention and explanation than ordinarily required. The hourly rate of $120 times the two hundred twenty-one hours expended would be $26,520, which was reduced to a minimum of $20,000 by testimony of defendant's counsel. We do not mean to suggest that the trial court must either find that amount to be reasonable or to award that amount. Rather, the finding of a reasonable value of only $5,000 is so contrary to the evidence as to constitute an abuse of discretion and is not even supported by any express findings of fact made by the trial court.

In addition, we are aware that, in awarding the $5,000 to be paid in the manner in which it did, the trial court, considering the tax consequences to plaintiff, failed to award the $5,000, but actually awarded a lesser amount. Additionally, there is no apparent reasonable basis for ordering the payments to be in installments over a period of more than two years. Although a court does not abuse its discretion by making a partial award of attorney fees, that was not the award in this case. Instead, the trial court purported to award the full amount of reasonable attorney fees.

Accordingly, the defendant's first assignment of error is well-taken only as it relates to attorney fees.

Defendant, in her third assignment of error, contends that it was against the manifest weight of the evidence for the trial court to find that plaintiff was not in arrears in his child support and alimony payments.

Defendant presented evidence in the form of the bureau-of-support payment sheet wherein payments to defendant that totalled $20,250 were itemized. Plaintiff, pursuant to a court order of temporary child support and alimony, was required to pay $22,000 during a forty-two-week period. The record contains evidence that the child support due from plaintiff to defendant was withheld weekly from plaintiff's employer and sent through the bureau of support. While at the same time, plaintiff paid, from his personal checking account through the bureau of support, temporary alimony due defendant. Plaintiff testified that he had made all payments due on the alimony. The printout from the bureau of support showed that a total of eighty-one payments had been received and paid out by the bureau through August 21, 1986. The first payment, although ordered to be paid on November 6, 1985, was actually received by the bureau of support on November 18, 1985. The trial court stated that it found "no arrearage because it appears that the bookkeeping is simply a week behind on everything that was going through the bureau of support." Moreover, in its findings of fact and conclusions of law, the trial court found that there was no credible evidence indicating that there was an arrearage on temporary orders. Given the evidence before the trial court, we cannot say that the trial court abused its discretion by finding no arrearage in child support and alimony from the temporary orders. Accordingly, defendant's third assignment of error is not well-taken.

Defendant, in her fifth assignment of error, contends that the trial court abused its discretion by excluding relevant evidence.

Evid. R. 401 defines "relevant evidence" as evidence having any tendency to make the existence of a fact that is of consequence to the determination of an act more or less probable. Under Evid. R. 402, relevant evidence is generally admissible although the Ohio rules recognize many instances when relevant evidence will be excluded. Evid. R. 103(A) specifically states that "[e]rror may not be predicated upon a ruling

which admits or excludes evidence unless a substantial right of the party is affected," and, under Evid. R. 103(A)(2), the substance of the evidence must be made known to the court.

Defendant contends that it was error for the trial court to exclude testimony as to opportunities which could have existed had she pursued her teaching career rather than remaining home to raise her children and maintain a household. R.C. 3105.18 delineates relative earning abilities of the parties as a factor to be considered by the trial court. What could have been the earning abilities given a different set of circumstances ordinarily is not probative as to present earning ability but may under some circumstances be relevant to determination of the amount of sustenance or property-division alimony. However, there was evidence that defendant would have been earning at least $30,000 had she been employed as a teacher for at least ten years. Accordingly, no prejudice has been demonstrated.

Defendant next contends that the exclusion of evidence of plaintiff's marital misconduct, which may have affected the financial position of defendant, was relevant and should not have been excluded. A review of the transcript clearly shows that the objection to further evidence at this point in the testimony was not sustained although the court did ask that the evidence be limited to economic results of plaintiff's marital misconduct. At that point, defendant's attorney failed to pursue any line of questioning regarding marital misconduct.

Defendant next contends that it was error for the trial court to exclude evidence as to whether plaintiff thought it reasonable for defendant to include an IRA in her budget. This question occurred during a review of defendant's budget. There was no limitation on defendant's testimony as to whether or not she should have an IRA and no prohibition upon the trial court properly to decide if defendant should have an IRA. Plaintiff's opinion of whether defendant's budget should contain an item for an IRA is irrelevant, and the exclusion of such testimony did not affect a substantial right of defendant.

Defendant next contends that the trial court excluded testimony regarding the conflict and emotions of the children in dealing with separation. A review of the record shows that, upon plaintiff's objection as to relevancy of the evidence, defendant offered no explanation of the substance of the evidence and, in fact, indicated that the question was no longer relevant because visitation was no longer an issue. Accordingly, defendant's fifth assignment of error is not well-taken.

For the foregoing reasons, plaintiff's first assignment of error, Part B and defendant's second and fourth assignments of error are sustained, defendant's first assignment of error is sustained with respect to attorney fees and is otherwise overruled, plaintiff's first assignment of error, Part A and second assignment of error and defendant's third and fifth assignments of error are overruled; the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is reversed with respect to the disposition of the tax shelters and with respect to child support and attorney fees but is otherwise affirmed; and this cause is remanded to that court for further proceedings in accordance with law, consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part, and*
*cause remanded.*

REILLY and BRYANT, JJ., concur.