DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Wood County Court of Common Pleas, Domestic Relations Division, in which the trial court ordered appellant, Louis T. Bauer, to pay $30,000 of appellee's attorney fees, and awarded appellee, Deborah A. Bauer, ten percent interest on past due child support as of the date each payment became due. For the reasons that follow, we affirm the judgment of the trial court in part and reverse in part.
On appeal, appellant sets forth the following two assignments of error:
 "ERROR NO. 1: THE TRIAL COURT'S JUDGMENT ENTRY ERRONEOUSLY AWARDED PLAINTIFF-APPELLEE $30,000.00 IN ATTORNEY FEES AND SAID AWARD WAS AN ABUSE OF DISCRETION AND MADE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 "ERROR NO. 2: THE TRIAL COURT'S JUDGMENT ENTRY ERRONEOUSLY AWARDED PLAINTIFF-APPELLEE 10% INTEREST ON UNPAID CHILD SUPPORT AND CONSTITUTED AN ABUSE OF DISCRETION."
The facts which are relevant to the issues raised on appeal are as follows. On December 13, 1995, the trial court granted the parties a divorce, designated appellee as the custodial parent of the parties' minor child, and ordered appellant to pay appellee child support, spousal support, and $20,000 in attorney fees. Appellant appealed the judgment ("first appeal"). While the first appeal was pending, the Wood County Child Support Enforcement Agency ("WCCSEA") filed a motion pursuant to R.C. 3113.210 for a judgment against appellant for $11,154.98 in unpaid child support and administrative fees. On January 17, 1997, the trial court continued the matter pending our decision in the first appeal.
On February 14, 1997, this court affirmed the trial court's decision, including the award of $20,000 in attorney fees to appellee. In March 1997, appellee filed a motion for attorney fees in addition to the $20,000 fees already awarded to her. On May 9, 1997, appellee filed another motion in which she asked the trial court to order appellant to pay $1,566.22 in medical bills for the parties' minor child, and incorporated by reference WCCSEA's motion for a judgment as to past due child support.On May 13, 1997, appellant's attorney filed a motion to withdraw, which was granted by the trial court. Appellant, acting prose, filed his own motion for attorney fees and a memorandum in opposition to appellee's motion for child support and attorney fees. Magistrate James Sharp, in an order journalized on June 2, 1997, made the following relevant orders:
 "1. [Appellant], by agreement and stipulation, has child support arrearages in the total principal sum of $15,282.28, as of May 28, 1997.
"* * *
 "8. Both parties are granted until June 30, 1997, to file any further motions.
 "9. Both parties and counsel are also directed to be prepared to argue whether or not unpaid child support is subject to interest being added to any unpaid amount. * * *"
On July 30, 1997, a hearing was held. The purpose of the hearing was to address the issues of medical expenses for the parties' child, appellee's motion for attorney fees from the time of the divorce hearing through the filing of the motions before the court at that time, and interest to be awarded on past due child support payments from August 1995 until June 1997. Appellant stipulated in court that he owed appellee $1,581.21 in medical fees and agreed to pay that amount by December 31, 1997. Appellant further stated that he was in the process of filing for bankruptcy, to which the court responded that it would continue the hearing if and when notice was received that a bankruptcy had actually been filed.
Appellee testified at the hearing as to her attorney fees between January 16, 1996 and July 10, 1997, and stated that she and her attorney had attempted to keep those fees down by utilizing paralegals and lesser-paid associate attorneys to do some of the work. Appellee further testified that, in her opinion, the fees were reasonable and necessary. However, she still owed $28,000 in attorney fees and is only able to pay $100 per month on the outstanding bill. Appellee stated that her income was $46,088 in 1995 and $50,549 in 1997. On cross-examination, appellee was unable to testify as to exactly how her attorney fees were charged, or as to how much of those fees were for separate legal representation involving her first divorce from John Filipovich, Sr.
At some point during the hearing, the trial court received notice from appellant's bankruptcy attorney that a bankruptcy petition had been filed. The magistrate immediately stopped the proceedings and continued the hearing until further notice. The magistrate stated that he was not going to rule on either the issue of attorney fees or the legal question of appellee's entitlement to interest on past due child support until the bankruptcy was dismissed or the stay was lifted. In addition, the magistrate limited the attorney fees under consideration to those charged to appellee after February 1995.
On December 5, 1997, appellee notified the trial court that appellant had dismissed his bankruptcy case. On January 12, 1998, attorney Gregg Hickman filed a notice of appearance on behalf of appellant. On February 5, 1998, the trial court awarded appellee $15,248.82, based on the stipulated child support arrearage, and ordered appellant to pay interest on that judgment from May 29, 1997. Appellant filed a motion for a new trial and a motion for appointment of a guardian ad litem for the parties' child, which appellee opposed. Appellee then filed a motion to modify child support, based on documents filed in bankruptcy court demonstrating that appellant had a monthly income of $8,500.
On May 12, 1998, the continuation of the July 30, 1997 hearing was held ("second hearing"). Testimony was presented at the second hearing by appellant, WCCSEA case managing supervisor Penni Friess, appellee's attorney Jack Straub, and appellee.
Appellant testified at the second hearing that he is the owner of two car washes and another business, New Horizons Wholesale Satellite Systems, Inc. (New Horizons). Appellant further testified that he represented to the bankruptcy court that he had a monthly gross income of $8,000 from the car washes and $2,000 from New Horizons; however, his monthly income from New Horizons was actually $500. Appellant stated that he had total assets of $733,000, and liabilities of $211,573.18. He further stated that he dismissed the bankruptcy case because he was able to refinance his debt by borrowing $108,000. Appellant further stated that, at the time of the hearing, there were four foreclosure actions pending against him; he filed "a few" subpoenas against USA Bank, Key Bank, and Charter One Bank in an effort to obtain financial information about appellee; and he filed grievances against appellee's attorneys regarding what appellant characterized as "improprieties" in the attorneys' billing methods.
Penni Friess testified that, as of the date of the second hearing, appellant had a child support arrearage of $16,672.63, including interest on unpaid child support from May 1997. Friess further testified that, except for one $300 payment, appellant made no child support payments from February 1996 until June 1997. Friess stated that appellant's current monthly child support obligation is $648.83. On cross-examination, Friess testified that, in addition to the unpaid child support owed to appellee, appellant owed $3,350.17 in unpaid poundage to WCCSEA.
Jack Straub testified at the hearing that his hourly rate for working on appellee's case has progressively increased from $180 to $225. Straub further testified that some of the fees owed to his firm by appellee were incurred when he represented appellee in a matter involving her first husband, John Filipovich, Sr. Straub stated that appellee also owed him for work that was necessary to defend against appellant's various legal maneuvers following the divorce hearing, including a motion for a new trial, objections to the magistrate's report, a Civ.R. 60(B) motion, and the first appeal. Straub further stated that he defended appellee in the foreclosure actions involving appellant because appellee was listed as a judgment creditor of appellant in those actions. Straub testified that he did not bill appellee for his work in the criminal actions and disciplinary actions against himself and members of his firm.
Straub stated that, in his opinion, appellant has the ability to pay appellee's attorney fees, based on appellant's testimony in the bankruptcy proceeding, and WCCSEA's determination that, for purposes of determining child support, appellant had a yearly income of between $45,000 and $53,000. He further testified that, as of the date of the hearing, appellee had incurred $30,000 in post-divorce attorney fees.
On cross-examination, Straub testified that he could not specify exactly how much of his bill was for the first appeal. Straub stated that appellee had collected $22,000 from appellant pursuant to the first award of attorney fees; however, not all of those funds had been used to defray appellee's attorney fees, despite the fact that appellee's attorney fees totaled in excess of $60,000.
On redirect, Straub testified that appellee was entitled to the additional attorney fee award pursuant to R.C. 3105.18(H), which allows for attorney fee awards while a divorce is pending, and R.C. 2323.51, which allows for attorney fee awards to a party who is forced to defend the frivolous actions of another. Straub further testified that all of the billings after July 10, 1997 were incurred for work done in relation to the parties' divorce, and that $3,000 in fees were incurred getting ready for the May 12, 1998 hearing. He also stated that $1,300 in charges for the Filipovich matter had been taken off appellee's bill for purposes of the second hearing.
Appellee testified that, as of the time of the hearing, she was working as a registered nurse and making $61,000 per year. Appellee stated that she was able to put $17,000 down on her own home, and she has a credit card debt of between $8,000 and $9,000. Appellee further stated that she has $600 to $700 left over each month from her salary, and she has a certificate of deposit in the amount of $17,000 left from the first attorney fee award.
At the close of all the evidence, the magistrate ordered both parties to submit written closing arguments. On August 10, 1999, the magistrate filed a decision in which he ordered appellant to pay appellee an additional $23,000 in attorney fees. Appellant then filed a motion to vacate the magistrate's decision and for a new hearing, which was granted in May 2000.
On October 12, 2000, after conducting an independent review of the entire record, the trial court filed a judgment entry in which it ordered appellant to pay appellee $30,000 in additional attorney fees incurred between the date of "the original divorce proceeding through the hearing on May 12, 1998." The trial court based its decision on its findings that the actions taken by appellee's attorney was necessary to protect her interests, the fees were reasonable, and appellant has the ability to pay the fees. In addition, the court ordered appellant to pay interest on the stipulated child support arrearages, as of the date each installment became due, at the rate of ten percent per annum. On November 9, 2000, appellant filed a timely notice of appeal.
Appellant argues in his first assignment of error that the trial court abused its discretion when it ordered him to pay $30,000 of appellee's post-divorce attorney fees. Appellant asserts that appellee did not present sufficient evidence at the June 30, 1997 and May 12, 1998 hearings to support the factors required by R.C. 3105.18. Appellant also asserts that appellee's attorney included in the award fees for items that were not related to the parties' divorce.
R.C. 3105.18(H) provides:
 "In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating his rights and adequately protecting his interests if it does not award reasonable attorney's fees."
"An award of attorney fees is a matter within the sound discretion of the trial court * * * [and] may not be reversed absent a clear abuse of discretion." Layne v. Layne (1992), 83 Ohio App.3d 559, 568, citingBirath v. Birath (1988), 53 Ohio App.3d 31 . The award may only be vacated upon a finding that the award is either contrary to law or against the manifest weight of the evidence and constituted an abuse of discretion. Swanson v. Swanson (1976), 48 Ohio App.2d 85, 90. "The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
In addition to the above, a court may, under some circumstances, rely on its own knowledge and experience in reviewing a record to determine the necessity for and reasonableness of attorney fees. Bauer v. Bauer
(Feb. 14, 1997), Wood. App. No. WD-96-025, unreported, citing Enriquezv. Enriquez (Dec. 8, 1995), Lucas App. No. L-94-252 unreported. However, at a minimum, the party requesting attorney fees should introduce evidence concerning the nature of the services provided, the time spent by counsel, and the rate charged. Kell v. Kell (Dec. 14, 1993), Ross App. No. 92CA1931, unreported, citing Knowles v. Knowles, (Dec. 18, 1992), Lucas App. No. L-92-033, unreported, and Estep v. Estep
(Aug. 8, 1990), Ross App. No. 1586, unreported.
The record demonstrates that the parties have engaged in extensive litigation in the almost six years since the final divorce hearing was held. The protracted nature of these proceedings was largely due to multiple requests by appellee for continuances, motions for reconsideration and modification of virtually every decision of the trial court at every stage of these proceedings, and the postponement of the July 30, 1997 hearing due to appellant's filing for bankruptcy, which was later dismissed.
Evidence was presented at the second hearing as to the nature of all of those proceedings and their connection to the parties' divorce case. Attorney Straub testified as to which fees were incurred as a result of the parties' divorce and which were related to other matters. Testimony was also presented as to which attorneys worked on various matters and how responsibilities were given to paralegals and associate attorneys in an effort to reduce appellee's attorney fees. Appellant and appellee both testified as to their respective incomes, expenses and ability to pay attorney fees. Both parties submitted post-hearing briefs to the trial court in which they reviewed the evidence presented at the hearings and argued their respective positions on the issue of attorney fees.
After conducting an independent review of the record at appellant's request, the trial court found that an award of attorney fees was necessary in order for appellee to fully litigate her rights and protect her interests. The court also found that the fees charged were reasonable and that, based on appellant's representations to the bankruptcy court, appellant has the financial ability to pay appellee's attorney fees.
Upon consideration of the foregoing, this court finds that the trial court did not abuse its discretion by ordering appellant to pay $30,000 of appellee's attorney fees incurred between the time of the divorce hearing through the hearing on May 12, 1998. Appellant's first assignment of error is not well-taken.
Appellant asserts in his second assignment of error that the trial court erred by ordering him to pay ten percent interest on a stipulated lump sum child support arrearage of $15,258.82, as of the date the individual payments became due ("pre-judgment interest").
The trial court ordered appellant to pay pre-judgment interest on the past due child support payments pursuant to In re Hammond (1992),78 Ohio App.3d 170. In Hammond, the Hamilton County Court of Appeals held that "[i]n the absence of factors making it inequitable, a right to interest under R.C. 1343.03(A) on unpaid child support accrues on the date each installment becomes due, and runs until paid." Id. at 172. However, we find that the standard expressed in Hammond is no longer applicable for the following reasons.
In 1994, two years after Hammond, the Ohio Supreme Court held that "on or after July 1, 1992, when a court determines that a support order has not been paid, the obligee has a statutory right to interest in delinquent child support payments [pursuant to R.C. 3113.219]." Dunbarv. Dunbar (1994), 68 Ohio St.3d 369, 370. Similarly, R.C. 3109.05(C) authorizes the trial court to assess interest on any unpaid amount of child support pursuant to R.C. 3113.219(A). At the time the trial court's judgment was issued, that statute provided:
 "[W]hen a court issues or modifies a support order * * * or in any proceeding in which a court determines the amount of support to be paid pursuant to a support order, the court shall determine the date the obligor failed to pay the support required under the support order and the amount of support the obligor failed to pay. If the court determines the obligor has failed at any time to comply with a support order, the court shall issue a new order requiring the obligor to pay support. If the court determines that the failure to pay was willful, the court shall assess interest on the amount of support the obligor failed to pay from the date the court specifies as the original date the obligor failed to comply with the order requiring the payment of support to the date the court issues the new order requiring the payment of support and shall compute the interest at the rate specified in division (A) of section 1343.03 of the Revised Code. The court shall specify in the support order the amount of interest the court assessed against the obligor and incorporate the amount of interest into the new monthly payment plan."
The trial court specifically found that it would not be inequitable in this case to order appellant to pay pre-judgment interest on the past due child support. But the trial court did not make the statutorily required finding that appellant's failure to pay child support before May 27, 1997 was willful, did not specify the dates on which appellant failed to comply with the support order, and did not compute the amount of interest due as a result of appellant's failure to pay.
Upon consideration of the foregoing, this court finds that the trial court erred as a matter of law when it ordered appellant to pay pre-judgment interest on the unpaid child support without making the requisite findings pursuant to R.C. 3113.219(A). Appellant's second assignment of error is well-taken.
The judgment of the Wood County Court of Common Pleas, Domestic Relations Division, is hereby affirmed in part and reversed in part. The case is remanded to the trial court for further proceedings consistent with this opinion. Court costs of these proceedings are assessed equally to appellant and appellee.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Richard W. Knepper, J.
Melvin L. Resnick, J. and James R. Sherck, J. CONCUR.