[Cite as *In re Marriage of Johnson-Dill*, 2015-Ohio-4020.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

IN RE:  THE MARRIAGE OF          :          **O P I N I O N**
SANDRA JOHNSON-DILL,

      Petitioner-Appellee,          :

    and          :          **CASE NO. 2014-L-120**

COLIN SCOTT DILL,          :

      Petitioner-Appellant.          :

Appeal from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 10 DI 000081.

Judgment:  Affirmed.


*Sandra A. Dray*, Sandra A. Dray Co., L.P.A., 1111 Mentor Avenue, Painesville, OH 44077 (For Petitioner-Appellee).

*Gregory S. Costabile*, Gregory S. Costabile Co., LPA, 1300 Fifth Third Center, 600 Superior Avenue, East, Cleveland, OH  44114 (For Petitioner-Appellant).


THOMAS R. WRIGHT, J.

{¶1}  Appellant, Colin Scott Dill, appeals the trial court's decision overruling his post-decree motion to modify child support.  He primarily asserts that the trial court erred in adopting the magistrate's factual findings regarding appellee, Sandra Johnson Dill's annual income.  In light of the limited record before us, the factual findings are upheld, as well as the trial court's decision increasing appellant's monthly support

payment.

**{¶2}** The parties were married for approximately four years and had one child, Luka Scott Dill, born in May 2008. In February 2010, the parties filed for dissolution and two months later, the marriage was dissolved. The shared parenting plan that the parties had previously negotiated was incorporated into the dissolution decree.

**{¶3}** Appellee was named the residential parent for school purposes. In all other respects, the parties were to share physical custody of Luka on a 50/50 basis. The plan provided for appellant to pay child support in the amount of $377.95 per month.

**{¶4}** To accommodate joint custody, appellant purchased a residence in the general vicinity of appellee's home, incurring a monthly mortgage of $1,346. The shared parenting plan requires appellant to pay $1,496 generally to cover Luka's medical, dental and optical insurance. Additionally, through the years following the dissolution, he has been financially responsible for all out-of-pocket costs associated with Luka's health care, for the child's casual clothing, and all summer camp fees. Appellee has covered Luka's school clothing and quarterly fees associated with the child's participation in a youth soccer league.

**{¶5}** At dissolution, appellant's annual income was $94,500, and appellee's was $75,996. Appellant's income was from two sources: (1) his primary job at Progressive Insurance; and (2) a weekend job at a fireworks company in Pennsylvania. Appellee's income was based solely upon her employment as a sales representative for Custom Products Corporation. During the three-year period after the dissolution, appellant's income remained fairly consistent. However, appellee's income increased

2

dramatically to $125,838 in 2011 and $146,958 in 2012.

{¶6} In January 2013, appellee's job with Custom Products was terminated. At the time of discharge, she was offered a severance package which included three months of her average monthly sales commissions. To receive these benefits, though, appellee had to agree not to compete with Custom Products for two years and waive all claims she might have against the company. Believing she needed to do so, appellee accepted the severance package and executed the non-compete agreement.

{¶7} In the months following discharge, appellee landed two full-time jobs. The second of these positions was as a sales representative with PBM Graphics, with a starting salary of $60,000. However, in light of the non-compete agreement, appellee could not sell some of the products offered by PBM Graphics. When she did not satisfy her monthly sales requirements, PBM Graphics terminated her employment in June 2014. Appellee then returned to work at Lakeside Sunray Window Films, the original company hiring her following her discharge from Custom Products. But, this most recent position was only part-time.

{¶8} In late 2013, appellee requested administrative review of the pending child support order through the Lake County Child Support Enforcement Agency. Before the agency could go forward, appellant moved the trial court to modify his support obligation due to a change in circumstances. Specifically, he argued that the parties' respective annual incomes had changed, and it was no longer equitable to require him to pay child support when he had custody of the child just as much as appellee.

{¶9} Appellant's motion was assigned to a court magistrate for consideration, and an evidentiary hearing was held in June 2014. During this proceeding, appellant

3

sought to present evidence establishing that Custom Products fired appellee because she refused to comply with company policy. Based upon this, appellant maintained that appellee was voluntarily underemployed, and that her annual income, for purposes of child support, should be deemed to have remained at the rate she earned in 2011 and 2012. In response, appellee testified that she never engaged in any intentional bad acts while working for Custom Products, and that her termination was due to a personality conflict she had with a manager who was hired in 2010.

{¶10} In a written decision, the magistrate found that appellee's termination at Custom Products was not "voluntary" for purposes of determining child support; hence, the magistrate did not impute an annual income for her at the rate she earned prior to 2013. The magistrate then found appellant's 2013 gross income to be $95,934.16, and appellee's gross income to be $95,175.64. The figure for appellee was based on the severance pay she received from Custom Products and the income she earned from PBM Graphics and Lakeside Sunray Window Films.

{¶11} Because the parties' combined adjusted income was greater than $150,000, the magistrate applied R.C. 3119.04(B) and the child support schedule to determine a new child support obligation for appellant. The magistrate's calculation revealed that appellant's minimum support payment should increase from $337.95 to $518.10 per month and ordered said increase. Moreover, the magistrate found that even though appellant had physical custody of Luka the same amount of time as appellee, he was not entitled to a decrease in the minimum child support payment because appellee's income would likely be less in 2014.

{¶12} Appellant filed objections raising two arguments. First, he asserted that

4

the magistrate erred in finding appellee's income for 2013 to be $95.175.64 rather than $123,000. Second, appellant argued that it was unjust for the magistrate not to grant a downward deviation from the minimum child support obligation because his percentage of parenting time was equal to that of appellee.

{¶13} With his objections, appellant requested additional time to submit a transcript of the evidentiary hearing. However, one month later, he informed the court that a transcript was not needed in order for the trial court to rule upon his objections. Thus, a transcript was not submitted.

{¶14} After appellee responded to appellant's objections, the trial court issued its judgment overruling the objections and adopting the magistrate's decision in its entirety. In part, the court emphasized that, absent a transcript, the magistrate's factual findings on income must be upheld. In a second judgment rendered the same day, the trial court ordered that appellant's monthly child support obligation be increased to $518.10.

{¶15} In appealing from both of the foregoing judgments, appellant asserts three assignments of error for review:

{¶16} "[1.] The trial court erred and abused its discretion in determining the parties' income for child support purposes.

{¶17} "[2.] The trial court erred and abused its discretion by naming Appellant as the child support obligor.

{¶18} "[3.] The trial court erred and abused its discretion by refusing to incorporate a deviation downward to Appellant's child support guideline worksheet obligation."

{¶19} Under his first assignment, appellant asserts two arguments challenging

5

the manner in which the trial court calculated appellee's income for 2013. According to appellant, the magistrate should have found that her 2013 income was significantly over $100,000, instead of $95,175. First, he maintains that the magistrate erred in failing to include in the "support income" calculation certain items that were reported as income on appellee's 2013 federal tax return. For example, appellant alleges that she received as income a payout from her pensions and annuities of $62,541.

{¶20} In calculating appellee's 2013 income, the magistrate only referenced the sums she received as part of her severance package and the moneys she earned from PBM Graphics and Lakeside Sunray Window Films. In claiming that appellee had other sources of income, appellant states that a copy of her federal tax return was introduced into evidence as an exhibit during the evidentiary hearing. However, given the state of the record in this appeal, the validity of appellant's assertion cannot be determined. As noted above, in objecting to the magistrate's findings before the trial court, appellant did not submit a transcript of the hearing, along with the exhibits.

{¶21} "Civ.R. 53(D)(3)(b)(iii) states that an 'objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available.' 'If an objecting party fails to submit a transcript or affidavit, the trial court must accept the magistrate's factual findings and limit its review to the magistrate's legal conclusions. *In re Estate of Lucas,* 2d Dist. No. 23088, 2009-Ohio-6392, ¶32. Thus, on appeal of a judgment rendered without the benefit of a timely transcript or affidavit, an appellate court only considers whether the trial court correctly applied the law to the facts as set forth in the

6

magistrate's decision. *Id.*' *King v. King,* 11th Dist. Geauga Nos. 2012-G-3068 and 2012-G-3709, 2013-Ohio-2038, ¶28." *Novak v. Novak,* 11th Dist. Lake Nos. 2013-L-047 and 2013-L-063, 2014-Ohio-10, ¶24.

**{¶22}** In regard to the "transcript" issue, this court has further noted:

**{¶23}** "The failure to file a transcript waives all factual challenges on appeal. *Eiselstein v. Baluck,* 7th Dist. Mahoning No. 11 MA 74, 2012-Ohio-3002, ¶17. The duty to provide a transcript to the trial court rests with the person objecting to the magistrate's decision. *In re O'Neal,* 11th Dist. Ashtabula No. 99-A-0022, 2000 Ohio App. LEXIS 5460, *7 (Nov. 24, 2000). 'Where the failure to provide the (* * *) transcript (* * *) is clear on the face of the submissions, the trial court cannot then address the merits of the factual objection because the objecting party, whether through inadvertence or bad faith, has not provided all of the materials needed for the review of that objection.' (Emphasis omitted.) *Wade v. Wade,* 113 Ohio App.3d 414, 418, 680 N.E.2d 1305 (11th Dist.1996)." *Estate of Stepien v. Robinson*, 11th Dist. Lake No. 2013-L-001, 2013-Ohio-4306, ¶28.

**{¶24}** In this case, the magistrate's decision contained a single reference to the funds appellee received from her pensions and annuities; i.e., the magistrate noted that she had "cashed in" a portion of her 401K to pay certain bills and purchase a vehicle for a child from a prior relationship. The magistrate did not indicate the amount of funds involved. Thus, in the absence of a complete transcript, neither the trial court nor this court can verify appellant's assertion regarding the amount appellee received from her 401K. More importantly, without a transcript, this court cannot determine whether there was a justifiable reason for not including the 401K funds in the magistrate's calculation

7

of her 2013 income. This also applies to the other sources of income cited by appellant. Because appellant's first challenge to the magistrate's calculation of appellee's income cannot be properly reviewed without a transcript, it lacks merit.

{¶25} Under his second argument, appellant states that, in calculating appellee's 2013 income, the magistrate should have imputed an average of the amounts she had earned at Custom Products the previous two years. Appellant argues that the evidence he presented at the hearing was sufficient to prove that her termination was due to her intentional failure to follow company policy. In light of this, he maintains that appellee was voluntarily underemployed.

{¶26} According to the magistrate's decision, appellant submitted into evidence documents that he obtained from Custom Products concerning appellee's termination. The documents consisted of her termination notice and two written warnings she received approximately two years before she was fired. The two warnings asserted that appellee had engaged in both unprofessional communications and counterproductive behavior.

{¶27} Pursuant to the magistrate's findings, appellee provided a separate explanation for her termination. Specifically, she stated that the two warnings were given to her merely because she had a personality conflict with a new company manager. The magistrate also quoted appellee as testifying that, prior to the hiring of the new manager, she had never received any warning for alleged misconduct, and had been the company's top salesperson. Moreover, the magistrate indicated that, according to appellee, she agreed to waive her potential claims against Custom Products because she needed the three-month severance pay.

8

**{¶28}** In essence, the magistrate found appellee not voluntarily underemployed and appellant's second argument is without merit.

**{¶29}** As a separate issue under this assignment, appellant further asserts that the magistrate erred in finding that appellee's 2014 income would be less than her 2013 income of $95,175. He maintains that the trial court should have rejected the finding because it was not predicated upon any proper documentation, such as pay stubs.

**{¶30}** In her written decision, the magistrate found that, after appellee was let go by PBM Graphics for failure to meet her sales quota, she was only working part-time for Lakeside Sunray Window Films. The magistrate further found that, while appellee was employed by PBM Graphics, there were some products she could not sell as a result of the non-compete. Additionally, the magistrate found that, since the non-compete agreement would remain effective until January 2015, it was unlikely that appellee would be able to obtain a lucrative sales position with another company during 2014.

**{¶31}** Given these factual findings, the magistrate's finding that appellee's part-time employment status would result in a smaller gross income for her during 2014 is supported. Furthermore, since the two-year non-compete requirement already cost appellee a prior job as a sales representative, the conclusion is not predicated upon mere speculation. Thus, the magistrate's holding as to appellee's 2014 income contains sufficient findings to support the conclusion.

**{¶32}** As the final issue under his first assignment, appellant contends that in determining his adjusted gross income for 2013, the magistrate erred in failing to consider business expenses he incurred regarding his income from his part-time fireworks job. He emphasizes that, in addition to the fact that the expenses were listed

9

on his 2013 tax return, he fully explained each expense as part of his trial testimony.

**{¶33}** In calculating a parent's adjusted gross income for child support purposes, a trial court does not err in rejecting business expenses listed in a tax return when the parent does not provide independent evidence corroborating the expenses. *Cronin v. Cronin*, 11th Dist. Lake No. 2011-L-134, 2012-Ohio-5592, ¶28. The magistrate found that appellant failed to introduce sufficient documentation to verify the business expenses. In the absence of a trial transcript, appellant has waived his ability to contest this finding.

**{¶34}** As appellant has failed to demonstrate error in the calculation of the party's income for "child support" purposes, his first assignment lacks merit.

**{¶35}** Under his next assignment, appellant submits that the trial court erred in not designating appellee as the child support obligor. Essentially, he asserts that, given appellee's total income for 2013, she should have been ordered to pay child support to him.

**{¶36}** Appellant again argues that the court erred in making income findings. For the reasons previously discussed, without a transcript, he has failed to demonstrate error and appellant's second assignment is also without merit.

**{¶37}** Under his final assignment, appellant contends that accepting appellee's 2013 income to be $95,175, the trial court and the magistrate erred in not reducing his child support obligation from the minimum $518.10 per month. He argues that, given that he has physical custody of Luka 50% of the time and pays for more of the child's daily needs than appellee, he was entitled to have his monthly obligation decreased. Appellant further emphasizes that, even if appellee's total gross income for 2013 was

only $95,175, that amount is still $19,000 more than what she made when his original child support obligation was set in 2010.

**{¶38}** "The amount of child support calculated pursuant to the basic child support schedule and applicable worksheet is rebuttably presumed to be the correct amount of child support due. R.C. 3119.03. This court has held, however, that R.C. 3119.22 allows a court to order child support in an amount that deviates from the calculation obtained from the child support schedule and applicable worksheet, only if after considering the factors and criteria set forth in R.C. 3119.23, it determines (1) that the amount calculated would be unjust or inappropriate; and (2) that the amount would not be in the best interest of the children. *Brown v. Brown*, 9th Dist. No. 02CA0030, 2003-Ohio-239, ¶9. Further, when the income of the parents is greater than $150,000, the appropriate standard for the amount of child support is 'that amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued.' *Birath v. Birath* (1988), 53 Ohio App.3d 31, 37, 558 N.E.2d 63." *Berthelot v. Berthelot*, 154 Ohio App.3d 101, 2003-Ohio-4519, ¶24 (9th Dist.2003).

**{¶39}** *See, also,* R.C. 3119.24(A)(1), which states that a shared parenting order shall be accompanied by a child support order "that is calculated in accordance with the schedule and with the worksheet set forth in section 3119.022 of the Revised Code, * * * except that, if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount."

**{¶40}** In this case, the magistrate found that appellee would have less income in

11

2014 than she had in 2013. This finding was based upon two points: (1) appellee would still be subject to the non-compete agreement during 2014, thereby making it difficult for her to find comparable work as a sales representative; and (2) she would not receive the $22,000 in severance pay that she received in 2013. These facts readily support the conclusion that, if the amount of appellant's child support obligation were decreased, Luka's standard of living would be adversely affected during the period in which he lived with appellee. In turn, it would be unjust and not in the child's best interest for appellant to pay less than the minimum child support obligation under the support schedule and worksheet.

{¶41} In the absence of a complete transcript of the evidentiary hearing before the magistrate, appellant cannot demonstrate any error in the magistrate's 2014 income findings. Appellant has failed to demonstrate an abuse of discretion and appellant's third assignment is without merit.

{¶42} The judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed.

COLLEEN MARY O'TOOLE, J., concurs

DIANE V. GRENDELL, J., concurs in judgment only.