JOURNAL ENTRY AND OPINION
Plaintiff-appellant Daryl Martin appeals from two separate judgments of the Cuyahoga County Court of Common Pleas, Division of Domestic Relations, both arising out of the divorce action between plaintiff and defendant-appellee Denise Martin. In Case No. 79219, plaintiff appeals from various aspects of the judgment entry and decree of divorce entered by the trial court governing disposition and division of marital property. In Case No. 79388, plaintiff appeals from the court's decision finding him guilty of contempt for non-compliance with a trial court order and sentencing him to ten days incarceration, subject to release upon posting of a $25,000 bond. The cases have been consolidated in this court for briefing, argument and decision. For the reasons set forth below, we affirm in part and reverse and remand in part.
Plaintiff and defendant were married on July 7, 1984. Three children were born as issue of the marriage: Kelly, born December 27, 1986; and the twins, Kevin and Kathryn, born August 17, 1989. Plaintiff filed for divorce on October 1, 1996. Defendant counterclaimed on October 15, 1996. A contested divorce trial was held in October and November 1998. The trial court issued a decision on January 5, 1999, finding that the defendant was entitled to a divorce on the grounds of gross neglect of duty and resolving the distribution of the parties' assets and debts. An amended and supplemental judgment entry and decree of divorce was filed on January 18, 2001. On February 13, 2001, plaintiff filed an appeal from that decision.
On March 13, 2001, plaintiff requested the trial court stay all orders pending appeal. Defendant opposed such a request and further requested additional orders of enforcement. On March 23, 2001, the trial court held a hearing regarding these matters and found plaintiff to be in contempt for failing to turn over property as directed during the divorce trial. Plaintiff appealed from that decision as well.
In Case No. 79219, plaintiff has appealed various aspects of the trial court's final judgment entry and decree of divorce, assigning six assignments of error. Assignment of Error I states:
 I. THE COURT ERRED IN ITS IDENTIFICATION AND VALUATION OF MARITAL PROPERTY, AND ITS FINDINGS IN THIS REGARD ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 A. THE TRIAL COURT ERRED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN ITS VALUATION OF A MARITAL ASSET, TO WIT: THE HOME FURNISHINGS.
 B. THE TRIAL COURT ERRED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FINDING THAT THE UNSECURED CREDIT CARD DEBT IS NOT A MARITAL LIABILITY.
 C. THE TRIAL COURT ERRED IN FINDING THAT IT PREVIOUSLY ORDERED THE CREATION OF AN ESCROW ACCOUNT AND ERRED IN DETERMINING THAT ANY SUMS SUPPOSEDLY THEREIN WERE A MARITAL ASSET.
 D. THE TRIAL COURT ERRED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FINDING THAT THE AMOUNT OWED ON THE HOME EQUITY LOAN WAS $10,000 WHEN THE EVIDENCE AT TRIAL ESTABLISHED THAT ONLY $9,000 WAS OWED.
 E. THE TRIAL COURT ERRED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FINDING THAT THE AMOUNT OF WIFE-APPELLEE'S PENSION WAS $5,000 INSTEAD OF $6,425.97.
 F. THE TRIAL COURT ERRED IN DETERMINING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE THAT THE UNSECURED DEBT BORROWED FROM HUSBAND-APPELLANT'S PARENTS WAS NOT A MARITAL DEBT.
 G. THE TRIAL COURT ERRED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FINDING THAT HUSBAND-APPELLANT'S SEPARATE ASSETS WERE COMMINGLED WHEN USED TO PURCHASE THE MARITAL HOME AND IN DETERMINING THAT THE ENTIRE VALUE OF THE MARITAL RESIDENCE WAS A MARITAL ASSET.
In his first assignment of error, plaintiff raises several issues, all relating to the trial court's resolution of the parties' property distribution and debt allocation.
In a divorce proceeding, a trial court must divide the marital and separate property of the parties equitably. R.C. 3105.17.1(B); Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355. In order to divide property equitably, the trial court must place a value on each contested item of property. Pawlowski v. Pawlowski (1992), 83 Ohio App.3d 794, 799. Valuing property involves factual inquiries, requiring an appellate court to apply a manifest weight of evidence standard of review. Wright v. Wright (Nov. 10, 1994), Hocking App. No. 94CA02, unreported. An appellate court will not reverse a trial court's valuation if it is supported by some competent, credible evidence. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77 at 80.
With these principals in mind, we proceed to address plaintiff's first issue.
 1. The Home Furnishings
Plaintiff argues that the trial court erred when it valued the home furnishings at $2,500. We agree.
It is error for a trial court to summarily arrive at a valuation of an asset or property without a proper evidential predicate. McCoy v. McCoy (1993), 91 Ohio App.3d 570, 578-579; Wright, supra, at 15. Even though the trier of fact is granted much leeway in obtaining a value, it must do so based upon the evidence before it. Id. To achieve a middle of the road estimation without some basis for such an adjustment from one extreme or the other would constitute error as not being supported by the evidence. Id.
A trial court must provide specific, clear and patent explanations of the basis for its property divisions. Kaechele v. Kaechele (1988),35 Ohio St.3d 93. Omission of the rationale behind the allocation of specific valuations of property will lead an appellate court to find that the trial court had an insufficient basis for making its award. Id.
At the divorce trial, plaintiff testified that the value of the home furnishings was $30,000. Defendant did not render an opinion as to the value of the contents of the house; however, she did produce photographs at the court's request of the household furnishings. In its final judgment entry of divorce, the trial court awarded the entire contents of the marital home to defendant and valued those furnishings at $2,500. (Journal Entry p. 15). This amount represented only 8 percent of the value estimated by plaintiff through his testimony. The trial court did not explain how or why it arrived at the $2,500 figure representing the value of the home furnishings.
We find that the trial court's valuation of the home furnishings is not supported by credible evidence and that the trial court abused its discretion in the use of that finding for a final division of marital assets. Accordingly, this issue is sustained and is remanded to the trial court to determine the value of the home furnishings.
 2. The Unsecured Credit Card Debt
Plaintiff argues that the trial court erred when it failed to find the unsecured credit card debt was a marital liability. We disagree.
A trial court's division of marital property need not be equal in order to be considered equitable. Winkler v. Winkler (1997), 117 Ohio App.3d 247. While the starting place for an equitable property division is an equal assignment of marital debt, after considering all the relevant factors in a case, a trial court may choose to award one party more of the marital debts and still have an equitable order. Cherry, 66 Ohio St.2d 348.
Here, a review of the record from the trial court demonstrates that the trial court's assignment of the credit card debt to the plaintiff was, in fact, equitable given the circumstances of the case. In the temporary support order, dated December 24, 1996, plaintiff was ordered to pay a minimum of $900 per month on credit card debts. At the divorce trial, plaintiff admitted that he had not complied with this order as to two of the credit cards: the Discover Card and the Ohio Savings Visa. Plaintiff also admitted that if he had complied with the temporary support order, these debts would not have existed at the time of trial. (Tr. 640-646).
In its final judgment entry of divorce, the trial court noted the following:
 Credit card debt, the balances of which, though originally arguably marital, are found to be the sole responsibility of plaintiff. Pursuant to the temporary orders of support, in addition to sums payable to defendant, plaintiff was obligated to satisfy said debts. Because plaintiff failed to do so, said debts, which otherwise would have been satisfied if the temporary orders had been followed, were neither paid nor included in the determination of arrearages as of the commencement of trial due defendant.
(Journal Entry p. 12).
The facts and circumstances of each case dictate what constitutes an equitable division of marital property. Terry v. Terry (1994),99 Ohio App.3d 228. Keeping this in mind, it is clear from the record that, under the present circumstances, the trial court's finding that plaintiff was solely responsible for the credit card debt did not constitute an abuse of discretion. Accordingly, this issue is overruled.
 3. The Escrow Account
Plaintiff argues that the trial court erred in finding that it ordered the creation of an escrow account. Plaintiff also argues that the trial court erred in determining that the $8,000 found therein was a marital asset. We disagree.
At the divorce trial, plaintiff testified that during the pendency of the divorce he gave $8,000 in cash to his brother to hold for him. Plaintiff admits that the money could have been used to support his children but states that it was earmarked for past due income taxes. Plaintiff admits that during his direct examination, when asked what his debts were, he did not reveal this tax debt. Plaintiff further testified that he received the money as a loan from his aunt to pay the tax bill; however, he could not produce any documentation evidencing this loan.
In response to defendant's request that the $8,000 be ordered paid into CSEA to support plaintiff's children, the trial court ordered that the $8,000 be deposited into an account with the signatures of counsel for both parties required as trustees before any withdrawals could be made. (Tr. 706-707). The funds were to remain so deposited until the court decided who was to receive the funds. (Tr. 706-707). Neither party expressed any opposition to such an order. (Tr. 707). When the court indicated that it would enter a written order for such a procedure, plaintiff's counsel responded in the negative. (Tr. 707).
In its final judgment entry of divorce, the trial court determined that the $8,000 found in this escrow account was marital property and divided it equally between the parties. (Journal Entry pp. 11, 14, 15).
We find the trial court did not abuse its discretion in reaching this conclusion. During trial, plaintiff admitted that his brother was holding $8,000 in cash for him. Although he testified that the money was borrowed from his aunt and was being earmarked for tax debts, he did not present any documentation or other evidence to prove this. The trial court serves as the trier of fact in a divorce proceeding and must judge the credibility of the witnesses and the weight of the evidence. Bussey v. Bussey (1988), 55 Ohio App.3d 117, 119. Thus, the trial court was free to weigh plaintiff's testimony and make its decision accordingly. Id. Accordingly, we find no abuse of discretion by the trial court in attributing the entire $8,000 as a marital asset subject to division as opposed to a debt owed by plaintiff to his aunt.
Finally, our review of the record indicates that ample evidence exists to support the trial court's finding that the trial court did, in fact, create an escrow account to hold the $8,000. Plaintiff's contention that there is no order and that a trial court speaks only through its journal entries is disingenuous in light of the fact that his counsel specifically stated that no written order was necessary. This issue is overruled.
 4. The Home Equity Loan
Plaintiff argues that the trial court erred in finding that the amount owed on the home equity loan was $10,000. We agree.
At the divorce trial, plaintiff testified that there was an outstanding equity loan on the marital residence with an outstanding balance of approximately $9,000. Defendant did not render an estimate as to the balance of the loan amount; however, she did produce evidence that as of December 1996 the balance on the loan was $9,453. Neither party provided any evidence, in the form of current documentation, to show the actual balance at the time of trial. In its final judgment entry of divorce, the trial court determined that the amount owed on this loan was $10,000 and allocated this debt to the defendant in the division of property. (Journal Entry p. 16). The trial court did not explain how or why it arrived at the $10,000 figure representing the value of the home equity loan.
The court's arbitrary valuation of the home equity loan at $10,000 is not supported by credible evidence. See McCoy,91 Ohio App.3d at 578-579. Because the factual finding was against the manifest weight of the evidence, we find that the trial court abused its discretion in the use of that finding for a final division of marital assets. Accordingly, this issue is sustained and is remanded to the trial court to determine the balance of the home equity loan at the time of trial.
 5. Defendant's Pension Plan
Plaintiff argues that the trial court erred in finding that the amount of defendant's pension plan was $5,000 instead of $6,425.97. We agree.
At the divorce trial, defendant testified that as of June 1998, the combined value of her IRA retirement accounts was $6,423.97.[1]
Defendant did not provide any evidence, in the form of current documentation, that the value of the IRA accounts had either increased or decreased in value at the time of trial. Plaintiff did not testify or provide any evidence as to the value of defendant's IRA accounts. In its final judgment entry of divorce, the trial court determined that the value of defendant's IRA was $5,000. (Journal Entry p. 11). The trial court did not explain how or why it arrived at the $5,000 figure representing the value of the IRA accounts.
We find that the evidence does not support the valuation that the court assigned to defendant's IRA. The only evidence presented at trial was that the value of defendant's IRA was $6,423.97. Therefore, we find that the trial court did not base its valuation on competent or credible evidence and its decision was against the manifest weight of the evidence. Because the factual finding was against the manifest weight of the evidence, we find that the trial court abused its discretion in the use of that finding for a final division of marital assets. Accordingly, this issue is sustained and is remanded to the trial court to determine the value of defendant's IRA as of the date of the final hearing.
 6. Monies Borrowed by Plaintiff from his Parents
Plaintiff argues that the trial court erred when it failed to find the $57,000 borrowed from his parents was a marital liability. We disagree.
A review of the record from the trial court demonstrates that the trial court's assignment of the $57,000 to the plaintiff was equitable given the circumstances of the case. In assigning the $57,000 to the plaintiff, the trial court specifically noted the following:
 $57,000 in unsecured debt borrowed by plaintiff from his parents, the majority of which was borrowed during the pendency of these proceedings for plaintiff's exclusive use, is the separate debt of plaintiff and not marital debt of the parties. (Emphasis in original).
(Journal Entry p. 11).
The trial court's finding that plaintiff was solely responsible for the $57,000 he borrowed from his parents did not constitute an abuse of discretion. Indeed, the trial court also found that defendant had incurred a similar debt in the amount of $37,000 for which she was held solely responsible. (Journal Entry p. 11). Accordingly, this issue is overruled.
 7. The Marital Residence
Plaintiff argues that the trial court erred in finding that his separate assets were commingled when used to purchase the marital home. Plaintiff also argues the trial court erred in finding that the entire value of the marital residence was a marital asset. We disagree.
Under certain circumstances, separate property may be converted to marital property when it is commingled with marital property. Peck v. Peck (1994), 96 Ohio App.3d 731, 734. The commingling of separate and marital property, however, does not destroy the character of the separate property unless its identity as separate property is not traceable. R.C.3105.171(A)(6)(b); Peck, supra. The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. Id.
The trial record reveals the following facts with regards to the marital home: Prior to the marriage, plaintiff owned a property on Harvard Road and sold it for a net profit of approximately $14,000. Six months prior to the marriage, plaintiff and defendant purchased a property on Howe Road for $66,500. This property was purchased in plaintiff's name and defendant's maiden name. During the marriage, the parties sold the property on Howe Road for $99,750 and used the proceeds as a down payment on the marital residence at Williamsburg Oval for $158,065.
At the divorce trial, extensive testimony was heard from both parties as to the contributions each made to the down payment on the marital residence. Defendant testified that both parties contributed equally (to wit: $10,000 each) to the down payment of the Howe Road property. Specifically, defendant testified that she borrowed $10,000 from plaintiff's parents and then cashed in a certificate of deposit to pay them back. In turn, plaintiff testified that he made the entire down payment for the Howe Road property from the proceeds of the sale of the Harvard Road property (to wit: $14,000) and that defendant did not contribute anything. Plaintiff also testified that $34,648.16 of the down payment for the property at Williamsburg Oval came from an inheritance he received.
In its final judgment entry of divorce, the trial court found that the entire value of the property at Williamsburg Oval was marital property and awarded each party 50% of its fair market value. In so doing, the trial court noted the following:
 The Court finds that both parties testified that they had made contributions to the down payment on the marital residence from their own separate property, and as such each argued that they are entitled to a greater share of the equity in the marital residence. The Court finds that neither party's testimony was persuasive on this point, and that the parties' financial affairs had become so entangled at the time the marital residence was purchased that any separate property was commingled and had become marital when pledged as a down payment.
We find the trial court did not abuse its discretion in reaching this conclusion. Both parties gave conflicting testimony as to their financial contribution for the down payment on the marital property. There was no documentary evidence offered in support of either claim. Defendant was unable to produce bank records to trace the financial history of the $10,000 of her own money she testified she spent on the Howe Road property. Plaintiff did not present any documentation or other evidence to the trial court to trace the financial history of the $14,000 of his own money he testified he spent on the Howe Road property or the $34,648.16 of his separate inheritance he testified he spent on the Williamsburg Oval property. The trial court was free to weigh this conflicting testimony and make its decision accordingly. See Buckles v. Buckles (1988), 46 Ohio App.3d 102, 110.
Since there was insufficient evidence to support a conclusion that one party contributed more than the other to the purchase of the marital home, the trial court's decision that neither party was entitled to a greater share of the marital residence was not against the manifest weight of the evidence. Accordingly, the record supports the trial court's decision that the parties commingled their marital assets and the separate property so as to make it marital property. This issue is overruled.
Assignment of Error I is overruled in part and sustained in part.
 II. THE COURT ERRED CONTRARY TO LAW IN AWARDING WIFE-APPELLEE HER ATTORNEY FEE AND IN DETERMINING THAT IT DID NOT HAVE JURISDICTION TO CONSIDER HUSBAND-APPELLANT'S ATTORNEY FEES.
In his second assignment of error, plaintiff argues that the trial court erroneously awarded defendant her attorney fees and erroneously determined that it did not have jurisdiction to consider his attorney fees. We disagree.
A decision to award attorney fees is a matter within the sound discretion of the trial court. Rand v. Rand (1985), 18 Ohio St.3d 356,359. Absent a clear abuse of discretion, a reviewing court will not reverse the judgment of the trial court. Birath v. Birath (1988),53 Ohio App.3d 31, 39.
Here, the record indicates that plaintiff did not request, pursuant to Civ.R. 52, separate findings of fact and conclusions of law regarding the trial court's award of attorney fees to defendant. Absent separate findings of fact and conclusions of law on this issue, we will presume that the trial court considered all the relevant statutory guidelines, including the provisions of R.C. 3105.18.[2] Cherry,66 Ohio St.2d at 356; Carman v. Carman (1996), 109 Ohio App.3d 698, 705. As long as the record contains evidence in support of the award of attorney fees, the trial court's decision will not be reversed by this court. Rand, supra, at 359.
Here, the record contains sufficient evidence to support the trial court's decision to award attorney fees to defendant in the form of additional spousal support and to deny attorney fees to plaintiff. The record indicates that plaintiff, although unemployed at the time of trial, is capable of earning at least $75,000 per year while defendant, also unemployed, is capable of earning only minimum wage employment. The record includes testimony from defendant that plaintiff failed to comply with the temporary support order and that she had to borrow approximately $37,000 from her parents in order to buy food and pay necessary bills, including medical bills for one child that has epilepsy.
Defendant also presented evidence that the hourly rate charged and the amount of time expended by her attorney was reasonable. Specifically, defendant submitted an affidavit for services rendered for her representation which listed a billing rate of $250 per hour and a total of one hundred and forty-plus hours expended for a total amount due of $40,808.97. Further, the trial court heard testimony from Marshall J. Wolf, defendant's attorney, who regularly practices in the field of domestic relations. Wolf testified that he usually charges $275 per hour for domestic relations work, but agreed to $250 per hour for defendant. He also testified that in his experience $250 per hour for domestic relations work was fair and reasonable and that the amount of time expended by him was reasonable. Indeed, plaintiff's attorney agreed that the number of hours put in by defendant's attorney was reasonable.
Based upon a careful review of the record, we find that the trial court's decision to award defendant and deny plaintiff attorney fees does not amount to an abuse of discretion. See Rand, 18 Ohio St.3d at 359. There is ample evidence in the record that the attorney fees charged defendant were reasonable and that defendant cannot reasonably afford to pay all of her own attorney fees. Further, an award of attorney fees is warranted since plaintiff's voluntary unemployment, noncompliance with court orders, and lack of cooperation resulted in defendant's having to incur the substantial attorney fees. See Matyas v. Matyas (Jan. 17, 1985), Cuyahoga App. No. 48645, unreported; Pournarus v. Pournarus (June 26, 1986), Cuyahoga App. No. 50782, unreported.
Finally, with regard to the second part of plaintiff's assignment of error that challenges the trial court's finding regarding his claim for attorney fees, plaintiff misconstrues the language of the judgment. In addressing the request for payment of attorney fees by plaintiff, the trial court noted the following:
 7. The Court further finds that plaintiff's counsel requested $20,000 in attorney fees which this Court determines were reasonable and necessary. However, the Court does not have jurisdiction to order the payment of these fees from plaintiff's share of the division of property and denies plaintiff's request that defendant be ordered to pay plaintiff's fees. (Emphasis added).
Here, the trial court did not state that it lacked jurisdiction to consider plaintiff's request for fees. Rather, it stated that it lacked jurisdiction to order plaintiff to pay his own attorney fees. A trial court exceeds its jurisdiction in attempting to determine the payment of attorney fees by a divorce client to his own attorney. See Zeefe v. Zeefe (1998), 125 Ohio App.3d 600, 613.
Assignment of Error II is overruled.
 III. THE TRIAL COURT ERRED IN THAT IT IMPROPERLY FOUND THAT HUSBAND-APPELLANT WAS VOLUNTARILY UNEMPLOYED AND ERRED IN THAT IT IMPROPERLY IMPUTED INCOME TO BOTH HUSBAND-APPELLANT AND TO WIFE-APPELLEE FOR PURPOSES OF DETERMINING CHILD AND SPOUSAL SUPPORT.
In his third assignment of error, plaintiff argues that the trial court erred in finding that he was voluntarily underemployed and in imputing an income of $75,000 for purposes of spousal and child support calculations. We disagree.
In calculating child support, the trial court must consider the combined gross income of both parents. See R.C. 3113.215 (B)(2). If the court determines that a parent is voluntarily unemployed or underemployed, it may impute to that parent income which it determines the parent would have earned if fully employed. R.C. 3113.215(A)(5). The question whether a parent is voluntarily unemployed or voluntarily underemployed is a question of fact for the trial court. Rock v. Cabral (1993), 67 Ohio St.3d 108, 112. Absent an abuse of discretion, that factual determination will not be disturbed on appeal. Id. A "parent's subjective motivations for being voluntarily unemployed or underemployed play no part in the determination whether potential income is to be imputed to that parent in calculating his or her support obligation." Id. at 111.
In order to impute income to a party, the trial court must follow a two step process. Id. First, the court must determine that the parent is voluntarily unemployed or underemployed. Second, the court must consider "the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides." R.C. 3113.215(A)(4)(b).
Here, plaintiff testified that at the time he filed for divorce, in October 1996, he was the General Manager and Executive Vice President of HD Steel Service Company, Inc. earning over $106,000 per year in addition to nontaxable benefits such as health and disability insurance, life insurance, a company car, and profit sharing plans. In April 1997, plaintiff left his job and four weeks later began working at Elwell-Parker Company, for an annual salary of $86,250 plus hospitalization. Plaintiff remained at Elwell-Parker for approximately 15 months. In July 1998, he lost that job. At the time of trial, plaintiff was unemployed.
Plaintiff claims that he did not leave his job at Elwell-Parker voluntarily. He claims that he was fired for no reason. Michelle Minda, Human Resource Director of Elwell-Parker testified that plaintiff was terminated for cause, stating that plaintiff's discharge ultimately occurred as a result of his misrepresentations as to his whereabouts on the date of his termination. Specifically, Ms. Minda testified that plaintiff told them that he had to attend a court hearing, when in fact he did not.
We find the trial court did not err in determining that plaintiff was voluntarily unemployed. There was sufficient evidence presented to show that plaintiff lost his job at Elwell-Parker due to his own wrong-doing. Plaintiff's being fired due to his own misdeeds does not excuse him from the responsibility of supporting his children or former spouse based upon his income potential. Therefore, we do not find an abuse of discretion in the trial court's determination that plaintiff was voluntarily unemployed.
Contrary to plaintiff's assertion that there was no evidence regarding the various factors listed in R.C. 3113.215(A)(4)(b) we find the transcript of the hearing discloses that considerable testimony was given concerning the income/employment issues. Plaintiff was able to obtain a well-paying job with similar benefits at Elwell-Parker within weeks of leaving HD Steel Service Company. Based upon undisputed information presented by the parties, the trial court limited the amount of imputed income to $75,000. In fact, the record shows that plaintiff is capable of earning an even greater yearly income than the amount imputed by the court. Therefore, since the determination was supported by the record, we cannot say that the trial court abused its discretion when it imputed income to plaintiff in the amount of $75,000 for the purposes of determining his child support and spousal support obligation.
Assignment of Error III is overruled.
 IV. THE TRIAL COURT ERRED BY FAILING TO MODIFY ITS TEMPORARY SUPPORT ORDER OF OCTOBER 2, 1996 RETROACTIVE TO SEPTEMBER 21, 1998 BY:
 (1) OVERRULING HUSBAND-APPELLANT'S MOTION TO MODIFY WITHOUT TAKING ANY EVIDENCE; OR
 (2) OVERRULING HUSBAND-APPELLANT'S MOTION TO MODIFY DESPITE TAKING EVIDENCE AT THE TRIAL, AND BASED ON THAT EVIDENCE FINDING THAT FINAL SUPPORT ORDER WAS TO BE SUBSTANTIALLY LOWER THAN THE TEMPORARY ORDER OF OCTOBER 2, 1997 AND NOT APPLYING THE SAME EVIDENCE TO DETERMINE THE MOTION TO MODIFY.
In his fourth assignment of error, plaintiff argues that the trial court erroneously overruled his motion to modify temporary support. We disagree.
On December 24, 1996, plaintiff was ordered to pay $3,583 per month in temporary child and spousal support. (See Temporary Support Order at V. 2920, P. 447-458). On September 21, 1998, plaintiff filed a motion to modify the temporary support order claiming that he had lost his job in July 1998 and was unemployed.
On October 13, 1998, the divorce trial commenced. Although the trial court did not hold a separate hearing on plaintiff's motion to modify the temporary support order, it did hear evidence during the trial regarding plaintiff's current employment situation. The trial court found that plaintiff was voluntarily unemployed and ordered him to pay $2,287.08 per month in child and spousal support, a reduction of $1,295.92 from the temporary support order. The trial court then overruled plaintiff's motion to modify the temporary support order. (Journal Entry p. 4).
Civ.R. 75(N) governs the granting of temporary spousal and child support and permits a trial court to grant temporary support for the party's sustenance and expenses during the suit. A temporary order is merely an order to provide for the needs of the parties during the pendency of the divorce action. LeForce v. LeForce (Feb. 11, 1985), Butler App. No. CA84-02-018, unreported. The trial court has discretion to order an amount different from the temporary order after final hearing, even without evidence of a change in circumstances. Id. The trial court need not justify a difference between a temporary and a permanent child support award. Bertulies v. Bertulies (Oct. 7, 1982), Cuyahoga App. No. D-122, 157, unreported.
Here, plaintiff was ordered to pay $3,583 per month in temporary support. This amount was merely a temporary provisional order which was to remain in effect until the parties' incomes and expenses could be equitably determined at the final hearing. Ibid. Thus, the trial court did not abuse its discretion in reducing this amount at final hearing.
Finally, the trial court was not required to relate the new support order back to the date the motion for modification was filed since plaintiff's motion to modify the temporary support order was overruled. Murphy v. Murphy (1984), 13 Ohio App.3d 388.
Assignment of Error IV is overruled.
 V. THE TRIAL COURT ERRED WHEN IT DENIED HUSBAND-APPELLANT HIS RIGHTS TO DUE PROCESS BY IMPROPERLY FINDING ARREARS SINCE JANUARY 1, 1999.
In his fifth assignment of error, plaintiff argues that the trial court improperly found arrears to date of judgment in its final judgment. We disagree.
In its original final judgment entry of divorce, dated January 5, 1999, the trial court expressed its intention to enter supplemental orders regarding arrearages of temporary support. Specifically, the trial court noted the following:
 * * * the restraining order currently in place with regard to this account shall remain in effect until the court can determine if Plaintiff has complied with this court's temporary support orders since the conclusion of the oral hearing on this matter.
(Journal Entry p. 6).
On February 3, 1999, plaintiff appealed the final judgment of divorce. On March 21, 2000, this court found that the trial court's final entry of divorce was not a final appealable order and remanded the case back to the trial court. On May 2, 2000, plaintiff filed a motion requesting that the trial court issue a final appealable order. On July 19, 2000, the trial court held a hearing on plaintiff's motion and ordered the parties to submit proposed final judgment entries.
Defendant's proposed final judgment contained the following passage in pertinent part:
 IT IS FURTHER THEREFORE ORDERED, ADJUDGED AND DECREED that there is $54,000 arrearage due on the prior orders of this Court for Temporary Child and Spousal Support from Plaintiff to Defendant.
Plaintiff's proposed final judgment contained the following passage in pertinent part:
 The Court reopened the record for the limited purpose of ascertaining the extent, if any, of arrearages that may have accrued (1) upon the temporary order from October 13, 1998 until January 1, 1999; and upon the Court's order dated January 5, 1999 as amended and supplemented herein. The Court finds that 2.5 elapsed from October 13, 1998 until December 31, 1998; that plaintiff was obligated by the temporary orders of this Court to pay $3,654.66 per month; that during such period nothing was paid; and that, therefore, plaintiff is in additional arrears on the temporary order from October 13, 1998 until December 31, 1998 in the sum of $9,136.65. Further, from January 1, 1999 through December 31, 2000, 24 months have expired; that plaintiff was obligated by this Court's order dated January 5, 1999 to pay $2,307.08 per month; that plaintiff paid the sum of $17,403.02; and that, therefore, plaintiff is further in arrears in the amount of $37,966.90. The total arrearages accruing from October 13, 1998 through December 31, 2000 (exclusive of any medical bills) is, therefore, $47,103.55.
On January 18, 2001, the trial court adopted defendant's proposed final judgment entry in its entirety. Thus, the final judgment entry of divorce contained the aforementioned passage as proposed by defendant and plaintiff was found to be $47,103.55 in arrears.
A trial court does not err when it accepts one party's proposed judgment entry and not the others where there is evidence to support the accepted entry. Paxton v. McGranahan (Oct. 31, 1985), Cuyahoga App. No. 49645, unreported; Yobe Electric, Inc. v. Jarvis (Apr. 12, 1984), Jefferson App. No. 83-J-1, unreported. Here, in considering the arrearage sum, the trial court had before it CSEA records and the proposals of both parties. Indeed, plaintiff's contention that he did not have notice that the trial court intended to determine arrearages is not supported by the evidence inasmuch as he included an arrearage amount in his proposed final entry. Accordingly, the trial court did not err in determining arrearages and including them in its final judgment.
Assignment of Error V is overruled.
 XI. THE TRIAL COURT ERRED IN OFF-SETTING A POTENTIAL ORTHODONTIC OBLIGATION IN THE SUM OF $3,800 AGAINST ITS ORDER OF PROPERTY DISTRIBUTION FROM WIFE-APPELLEE TO HUSBAND-APPELLANT, WHILE STILL ORDERING HUSBAND-APPELLANT TO PAY SAID SUM ELSEWHERE IN ITS JUDGMENT ENTRY. IT ALSO ERRED IN FAILING TO TAKE ANY EVIDENCE OR MAKE ANY DETERMINATION THAT SAID DEBT WAS INCURRED.
In his sixth assignment of error, plaintiff argues that the trial court erroneously ordered him to pay the orthodontic bill in the amount of $3,800, twice. We disagree.
In addressing the orthodontic bill, the trial court did not order plaintiff to pay the orthodontic bill twice. Rather, the trial court ordered defendant to indemnify plaintiff regarding the orthodontic bill in the amount of $3,800. Specifically, the trial court found plaintiff to be responsible for the bill, but had the amount set-off against sums due defendant from plaintiff in the division of property. (Journal Entry pp. 13-14, 16). Plaintiff misconstrues the language of the judgment and no double payment exists.
Assignment of Error XI is overruled.
 Case No. 79388
In Case No. 79388, plaintiff has appealed from the trial court's judgment finding him in contempt and brings the following sole assignment of error:
 I. THE TRIAL COURT ERRED, CONTRARY TO LAW, AND ABUSED ITS DISCRETION IN FINDING HUSBAND-APPELLANT IN CONTEMPT OF COURT.
In this assignment of error, plaintiff argues that the trial court never entered a valid order creating an escrow account, and therefore, he could not have been in contempt of that order. Since we have already determined that the trial court did enter a valid order creating an escrow account (see Assignment of Error I, Subsection 5), we shall only address plaintiff's contention that the trial court erred in finding him in contempt.
Following the trial court's final entry of divorce, plaintiff filed a motion to stay all orders pending appeal. Defendant filed a brief in opposition and requested additional orders of enforcement. On March 23, 2001, the trial court held a hearing regarding these matters. During this hearing, the trial court heard testimony regarding plaintiff's withdrawal of $8,000 from the account the court had ordered to be made during the divorce trial. Plaintiff testified that he believed he was allowed to do so because the final judgment of divorce lifted all restraining orders. The trial judge did not agree and found plaintiff to be in contempt of court. Specifically, the trial court found as follows:
 1. Plaintiff knowingly and intentionally appropriated the sum of $8,000 to his own use out of funds this Court had expressly ordered on November 2 and 3, 1998 to be held pending further order of this Court, as evidenced by the transcript of proceedings of the trial in this matter at pages 700-708 and page 733;
 2. Said transcript reveals at page 707 that plaintiff was fully aware of this Court's direction to him regarding said $8,000.00;
 3. That as a result of plaintiff's action the funds were therefore not available for distribution at the time of this Court's judgment dated January 18, 2001 found at Volume 3702, Pages 210, et seq;
 4. That, therefore, plaintiff is in contempt of this Court.
 IT IS THEREFORE ORDERED that plaintiff be and is held in contempt of Court, remanded to the custody of the County Sheriff and sentenced to 10 days in the Cuyahoga County Jail commencing forthwith. The Sheriff may release plaintiff from jail upon the posting of a $25,000 cash bond. (JE, contempt order, 3/23/01).
A court may hold a party in contempt who fails or refuses to comply with its orders and may impose such penalties as are reasonable and just. R.C. 2705.02(A). Before a judgment of contempt of court in a divorce action will be considered valid, the affected party must have received adequate notice of the hearing on the charge, adequate time to prepare a defense, and an opportunity to be heard. Culberson v. Culberson (1978), 60 Ohio App.2d 304; Courtney v. Courtney (1984),16 Ohio App.3d 329, 332. The element of notice for a finding of indirect contempt is a prerequisite for a valid contempt finding. East Cleveland v. Reed (1977), 54 Ohio App.2d 147, 150. Notice is sufficient when it appraises an alleged contemnor of the charges against him so that he or she is able to prepare a defense. Cincinnati v. Cincinnati District Council 51 (1973), 35 Ohio St.2d 197, 203.
Here, plaintiff did not receive any notice that the trial court intended to hold a contempt hearing. The hearing on March 23, 2001 was set for the plaintiff's motion to stay and the defendant's motion for additional enforcement. There was no motion to show cause pending before the court. Notice that contempt proceedings may be held must be given to the one who may be found guilty of contempt. Ibid. Accordingly, we find that the trial court erred in finding plaintiff guilty of contempt without first ensuring that he received adequate notice. This assignment of error is sustained.
Judgment affirmed in part; reversed and remanded in part.
It is ordered that appellee and appellant shall equally share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas Domestic Relations Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and JAMES D. SWEENEY, J., CONCUR.
[1] The balance of the Mainstay Family of Funds was $6,013.03 and the balance of the National City Bank IRA was $420.94.
[2] R.C. 3105.18(H) states in pertinent part:
 In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees.