OPINION
Appellant, Ralph L. Humphrey, appeals from the judgment of the Ashtabula County Court of Common Pleas, Domestic Relations Division.
The parties to this appeal were married for approximately thirty-eight years. They married, on March 15, 1959, and were separated, on May 1, 1997. The parties have three emancipated children.
On November 18, 1997, Sandra R. Humphrey, appellee, filed a complaint for divorce, support, restraining orders, and other relief. Appellant filed an answer.
On February 25, 1999 the parties entered into written stipulations, which were admitted into evidence. Trial commenced May 20, 1999 and concluded February 1, 2000. On May 30, 2000, a judgment entry of divorce was filed.
In its judgment entry, the trial court divided the parties' marital assets, as follows: appellee was awarded two parcels of real property valued at $260,000; appellant was awarded real property valued at $20,000; the parties' retirement accounts were ordered to be equitably divided; and, the Humphrey Insurance Agency. Inc. ("Agency"), was equally divided.
The Agency's stipulated value was $1,251,555. The Agency is comprised of two parts: the business itself and six parcels of real property upon which the business is located and appellant resides. The business, which was valued at $579,551, was awarded to appellant. The parcels of real property were valued at $672,000. Appellee was awarded $625,577, as her share of the Agency. The court ordered that the Agency's real property be sold and that upon the sale of the last parcel, appellee must pay appellant $46,026, to realize his one-half share of the stipulated value of the Agency. The court retained jurisdiction in order to make adjustments if either the real estate or the business sells for an amount different than the stipulated value.
In addition, the court awarded appellee spousal support in the amount of $4,000 per month for a five year period. The court reserved jurisdiction concerning spousal support so that it could adjust both the amount and the duration of the award. Appellant was also ordered to pay $35,000 in attorney fees.
From this judgment, appellant assigns the following as error:
 "[1.] The trial court erred in determining that the transfer of Humphrey Insurance Agency, Inc. from the husband's mother to the husband in 1986 was not a gift to the husband and therefore the 1986 value of the business was not the separate property of the husband.
 "[2.] The trial court erred in failing to equitably divide the marital property.
 "[3.] The trial court erred in failing to characterize and distribute all of the property of the parties.
 "[4.] The trial court erred in the manner it divided the business.
 "[5.] The trial court abused its discretion in determining the amount and failing to set a limit upon the duration of the award of spousal support to the wife.
 "[6.] The trial court erred in ordering the husband to pay the sum of $35,000 towards the wife's attorney fees and costs."
In appellant's first assignment of error, he argues that the transfer of the Agency, from his mother, Christina B. Humphrey, to appellant, was a gift. Therefore, he argues that the trial court erred in determining that the value of the Agency was marital property, not separate property. Appellant also contends that the trial court erred in relying on Christina Humphrey's 1998 gift tax return.
When allocating property in a divorce, the court initially must characterize the property as either marital or separate and then award each spouse his or her separate property. Peck v. Peck (1994),96 Ohio App.3d 731, 734. The trial court's characterization of property, as separate or marital, is a question of fact, thus, a reviewing court must apply a manifest weight of the evidence standard of review to the trial court's characterization. Frederick v. Frederick (Mar. 31, 2000), 11th Dist. No. 98-P-0071, 2000 Ohio App. LEXIS 1458, at *13. "Under this standard, the judgment of the trial court will not be reversed as being against the weight of the evidence if the court's decision is supported by competent, credible evidence." Id. at *13-14.
Generally, the party seeking to establish an interest in real or personal property as his or her own separate property "must establish the separate nature of the property by a preponderance of the evidence." Id. at *17. However, when a party is seeking to establish that a gift of real or personal property, made after the date of the marriage, is separate property, he or she bears the burden of establishing by clear and convincing evidence that the gift was given to only one spouse. R.C.3105.171(A)(6)(a)(vii).
"The essential elements of an inter vivos gift are as follows: (1) the intent of the donor to make an immediate gift; (2) the delivery of the property to the donee; and (3) the acceptance of the gift by the donee after the donor has relinquished control of the property. George v. Zink
(May 23, 1997), 11th Dist. No. 96-L-132, 1997 Ohio App. LEXIS 2234, at *4-5, citing Streeper v. Myers (1937), 132 Ohio St. 322, paragraph one of the syllabus.
The record reveals that appellant is the sole shareholder of the Agency. The Agency is a Subchapter S corporation, which "is considered a `flow-through' entity whereby the income and losses of the business are nontaxable to the corporation, but instead flow through to the individual shareholders." Dupee v. Tracy, 85 Ohio St.3d 350, 351, 1999-Ohio-382. It is undisputed that ownership of the Agency and the related real property were transferred to appellant, after the date of the marriage. Thus, the second element of an inter vivos gift, delivery, has been satisfied; however, the first and third elements are disputed.
With regard to the first and third elements of an inter vivos gift, the record reveals that on December 31, 1986, Christina Humphrey and the Agency executed a purchase agreement whereby the Agency purchased all three hundred and thirty three shares of the Agency owned by Christina Humphrey. The consideration for these shares was set forth in an attached promissory note.
 Pursuant to the terms of the promissory note, the Agency promised to employ Christina Humphrey at an annual salary of $43,200, plus enumerated benefits, so long as she was able to perform her duties. In the event that Christina Humphrey is unable to perform her duties, the Agency shall pay her $45,000 per year for the duration of her life. Additionally, Christina Humphrey retained the right to examine the Agency's books and records and the right to disprove of the transfer of any of the Agency's mortgaged real property.
 Appellant, in his capacity as secretary/treasurer of the Agency, signed the promissory note. Additionally, appellant signed a personal guaranty of the promissory note. A mortgage was taken upon the Agency's real property, securing the payments to Christina Humphrey.
 The purchase agreement clearly demonstrates that Christina Humphrey did not gift her shares to the Agency, nor did she relinquish control. To the contrary, the record reveals that in addition to securing employment and/or payments for the duration of her life, Christina Humphrey retained the right to inspect the books and to veto any prospective sales of the Agency's real property.
 The record is devoid of any written documentation regarding the manner in which appellant acquired his shares in the Agency. The only evidence on this issue is the testimony of appellant, who attested that he acquired all four outstanding shares of the Agency in 1986.
 Specifically, appellant testified that in 1986, "337 shares of stock were turned back into the corporation, and [he] was issued four for sole ownership of the business." While appellant does not explain exactly how he acquired his four shares, he testified that he received his shares contemporaneously with the execution of the purchase agreement between his mother and the Agency. Therefore, the record shows that on December 31, 1986, Christina Humphrey transferred the only outstanding shares of the Agency to her son, while retaining some control of the Agency — for the duration of her life — in two separate, but contemporaneous transactions.
 Given the non-gratuitous nature of the purchase agreement, we cannot conclude that the trial court erred in determining that the aforementioned contemporaneous transactions did not involve gifts. As noted, Christina Humphrey did not relinquish control of the Agency or the Agency's real property. To the contrary, the record reveals that Christina Humphrey retained the right to examine the books and to prohibit transfer of the Agency's real property.
 Further, we conclude that the trial court did not err in relying on Christina Humphrey's 1998 gift tax return. Certainly, Christina Humphrey's delay of nearly twelve years in filing a gift tax return for the 1986 transaction calls into question whether she had the intent to make an immediate gift in 1986. We also note that the information contained on the gift tax return contradicts the terms of the purchase agreement and was completed after appellee had filed her complaint for divorce.
 Based on the foregoing analysis we conclude that, in the instant case, appellant did not satisfy his burden of proving that the value of the Agency was his separate property. Appellant failed to prove the requisite elements to establish an inter vivos gift. Hence, the trial court's characterization of the ownership of the Agency is supported by competent, credible evidence.
Appellant's first assignment of error lacks merit.
In appellant's second assignment of error, he argues that the trial court failed to equitably divide the marital property. In support of this argument, appellant argues that while the court equally divided the Agency and the retirement assets, it awarded, without explanation, the majority of the parties' real property to appellee.
Generally, the division of marital property is required to be equal under R.C. 3105.171(C)(1); however if an equal division of marital property would be inequitable, the trial court must divide the marital property in a manner that it deems equitable. Messina v. Schneider, 11th Dist. No. 2000-P-0073, 2001-Ohio-8804, 2001 Ohio App. LEXIS 5865, at *6. "When dividing the marital property, `the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law.'" Id., citing Kaechele v. Kaechele (1998), 35 Ohio St.3d 93, paragraph two of the syllabus.
Once the court has characterized the property as marital or separate, the actual distribution of the assets is reviewed under an abuse of discretion standard. R.C. 3105.171(D). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable; not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
In its judgment entry, the trial court stated that it "provided for an equal division of the marital assets." However, review of the judgment entry reveals that the division was not equal. While the trial court divided both the retirement assets and the Agency assets equally, the real property was not divided equally.
The value of the real property awarded to appellee exceeded that awarded to appellant by $240,000. The court provided no explanation for this inequity. Because the trial court did not indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law, the trial court did not comply with the rule set forth in Kaechele.
Further, appellee was awarded the marital residence, her residence, and the property upon which appellant had established residence. Based on the facts and circumstances of this case, the court's disposition of the marital property constituted an abuse of discretion.
Appellant's second assignment of error has merit. This case is remanded for the court to comply with R.C. 3105.171 and the rule set forth inKaechele.
In appellant's third assignment of error, he argues that the trial court erred in failing to include three bank accounts in its award of separate property to appellant and in failing to divide a checking account which was stipulated as marital property. Appellee agrees that the trial court erred.
Appellant's third assignment of error has merit. This case is remanded for the trial court to award to appellant the following separate property: (1) First Merit checking account #1018085415; (2) First Merit savings account #900215000740; and, AG Edwards money fund account # 315-043409-002, and to divide, as marital property, the parties' Star Bank checking account #5760-7628.
In appellant's fourth assignment of error, he argues that the trial court erred in the manner in which it divided the Agency. Essentially, appellant contends that the trial court erred in ordering liquidation of the Agency's real property. He asserts that a more equitable option would allow the business to remain intact and order appellant to pay appellee the value of her share of the real estate. In response, appellee argues that the trial court's division of property did not constitute an abuse of discretion and states that she would be willing to allow appellant to obtain a loan and pay her the appraised value of the real estate with an appropriate interest factor.
When dividing property in domestic cases, the trial court is vested with broad discretion, which will be upheld absent an abuse of discretion. Middendorf v. Middendorf, 82 Ohio St.3d 397, 401,1998-Ohio-403.
In the instant case, the parties stipulated to the 1998 value of the Agency, thus, the trial court did not abuse its discretion by determining that each party was entitled to receive half the value thereof. However, the trial court abused its discretion by ordering the sale of the Agency's real property when both parties were willing to develop a payment plan which would allow the business to remain intact and allow appellee to receive monetary compensation for the value of her share of the Agency. Further, ordering a sale of the Agency's property without considering the income tax consequences to appellant constituted an abuse of discretion. "A domestic relations court is required to divide marital property equally, or in a manner that would manifest an equitable division of marital property. R.C. 3105.171(C)(1)." Willis v. Willis (May 16, 1997), 11th Dist. No 96-T-5549, 1997 Ohio App. LEXIS 2132, at *6. When dividing marital property, the court must consider the enumerated factors set forth in R.C. 3105.171(F), including the tax consequences on the parities. Id. at *6-7.
Appellant's fourth assignment of error is with merit. This case is remanded for the trial court to develop an equitable plan allowing appellant to retain ownership of the Agency's real property and ordering appellant to pay appellee the stipulated value of the Agency's real property. If the parties and the trial court cannot develop an equitable payment plan, and the property consequently must be sold, the trial court must consider the tax consequences that the sale of the Subchapter S corporation's real property will have on appellant to manifest an equitable division of marital property.
In appellant's fifth assignment of error, he argues that the trial court abused its discretion in its award of spousal support. Appellant does not object to the trial court's factual findings. Instead, appellant takes issue with the trial court's conclusion.
When making an award of spousal support, the trial court must review the factors set forth in R.C. 3105.18(C) that support such an order. See e.g., Messina, at 83. Then, the court must indicate the basis for awarding spousal support in sufficient detail to enable a reviewing court to determine whether the award is fair, equitable, and in accordance with the law. Kaechele, paragraph two of the syllabus.
The trial court's judgment entry reveals that the trial court adequately considered the statutory factors in making its decision to award spousal support. In its consideration of the statutory factors, the court noted that both parties have advanced degrees, but appellee "has not been employed to her maximum potential through her own choice." Despite this, the court stated that the award of spousal support "should permit [appellee] enough time to become employed in a more conventional field or to develop her expertise in the type of practice she desires."
Additionally, the court stated that the property division and the spousal support award should ensure that appellee is able to maintain the "comfortable, but not extravagant" standard of living established during the marriage. In light of the significant value of the property awarded to appellee, the court's reasoning with regard to the amount and duration of the award is not clear.
"While there is some evidence which arguably supports the award, it would be improper for this court to perform the intermediate analytical steps which the trial court neglected to recite. We refuse to speculate regarding the deliberative process employed by the trial court in reaching its spousal support award." Herman v. Herman (Mar. 28, 1997), 11th. Dist. No. 96-P-0194, 1997 Ohio App. LEXIS 1223, at *13, citingSchneider v. Schneider (1998), 61 Ohio App.3d 164.
Appellant also argues that the trial court erred in retaining jurisdiction with regard to the duration of the award of spousal support. Specifically, he contends that the trial court should not be permitted to increase the duration of the award.
Based on the circumstances in a specific case, a trial court's failure to retain jurisdiction to modify a spousal support award based on changes in the parties' incomes, may constitute a breach of discretion. Link v.Link (June 20, 1997), 11th Dist. No 96-L-067, 1997 Ohio App. LEXIS 2680. In the instant case, the trial court correctly reserved jurisdiction due to the anticipated changes in the parties' monthly incomes and expenditures. Appellee testified that she anticipated imminent changes, including mortgage payments. Appellant will incur additional expenses because he will need to establish a new residence, and a new location for the Agency once the Agency's property is sold. After completing her training, appellee may experience a change in income. Likewise, after the sale of the Agency's real property, the profitability of the Agency may change, thus affecting appellant's income.
Appellant's fifth assignment is with merit with regard to the trial court's failure to provide its basis for the spousal support award. This case is remanded for the trial court to provide the rationale for its award of spousal support, both in amount and duration.
In appellant's sixth assignment of error, he argues that the trial court erred in awarding attorney fees. First, he contends that the award is actually greater than appellee's attorney fees and costs. Second, he argues that the award is unreasonable because appellee has sufficient assets with which to pay her attorney fees and costs.
"The general rule is that the decision whether to award attorney fees is a matter within the sound discretion of the trial court. In the absence of a clear abuse of discretion, a reviewing court will not reverse the judgment of the trial court." Fredrick, at*71, citing Birathv. Birath (1983), 53 Ohio App.3d 31, 39.
R.C. 3105.18(H) provides that the court may award reasonable attorney fees if it determines that: (1) the other party has the ability to pay, and (2) the moving party will be prevented from litigating his or her rights if attorney fees are not awarded. The reasonableness of the attorney fees must also be considered in light of the spousal support factors set forth in R.C. 3105.18(C).
Review of the judgment entry reveals that the trial court failed to make either of the requisite findings pursuant to R.C. 3105.18(H). Because the trial court failed to discuss how the factors set forth in R.C. 3105.18(C) influenced its decision to award spousal support, we cannot determine whether the award of attorney fees was reasonable in light thereof. The trial court's failure to comport with the requirements enumerated in R.C. 3105.18(H) and its failure to document its reasoning with regard to its consideration of the factors set forth in R.C.3105.18(C), constituted an abuse of its discretion.
Further, when determining the proper amount of attorney fees, the trial court must also consider the factors enumerated in DR 2-106(B). Swansonv. Swanson (1976), 48 Ohio App.2d 85, 90. In the instant case, Atty. Gary S. Okin testified regarding the attorney fees incurred in this matter and presented a billing sheet representing the time and labor spent on this case. A lawyer may testify as to his hourly fee and the number of hours expended; however, determining fees solely on time expended is deficient, as a matter of law, because it is only one of the factors to be considered. See Id. at *91-92. "The value of services may be greater or less than that which would be reflected by a simple multiplication of an hourly rate by time expended." Id. at 92. Thus, the trial court erred in failing to consider the factors enumerated in DR 2-106(B).
Appellant's sixth assignment of error has merit. This case is remanded for the trial court to comply with the foregoing requirements. Further on remand, the trial court must correct the inconsistency in the amount of the award of attorney fees. In its judgment entry the trial court stated "[appellee] has incurred $30,000 in attorney fees and costs", but it awarded "the sum of $35,000 towards [appellee's] attorney fees and costs * * *."
Based on the foregoing, the judgment of the Ashtabula County Court of Common Pleas is affirmed in part and reversed and remanded in part for proceedings consistent with this Opinion.
WILLIIAM M. O'NEILL, P.J., DONALD R. FORD, J., concur.